Humberto Guizar, SBN 125769
**LAW OFFICES OF HUMBERTO GUIZAR**
**A PROFESSIONAL CORPORATION**
3500 W. Beverly Blvd.
Montebello Ca 90640
Tel: (323) 725-1151
Fax: (213) 402-8622
Email: hguizar@ghclegal.com

Christian Contreras, SBN 330269
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000
Fax: (323) 597-0101
Email: CC@Contreras-Law.com

Denisse O. Gastélum, SBN 282771
Selene Estrada-Villela, SBN 354994
**GASTÉLUM LAW, APC**
**A Professional Corporation**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com
sestradavillela@gastelumfirm.com

Attorneys for Plaintiffs,
ESTATE OF IRENE RIVERA, *et al.*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF IRENE RIVERA, by and through successor in interest, R.R.; R.R., a minor, by and through Guardian Ad Litem, Bertha Rivera; BERTHA RIVERA, individually; and JOSE RIVERA, individually<br><br>Plaintiffs,<br><br>v.<br><br>KERN COUNTY SHERIFF'S OFFICE; a public entity; KERN COUNTY, a public entity; SHERIFF DONNY YOUNGBLOOD, in his individual and official capacities; KERN COUNTY HOSPITAL AUTHORITY, a public entity; LEXI PRESSLEY; SAMUEL FLORES GONZALES; MATTHEW HARKEY; MARK MILLER; JULIUS QUILALA; and DOES 1 through 10, individually, jointly and severally,<br><br>Defendants. | CASE NO.  1:24-cv-01141-CDB<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>2. Failure to Provide Medical and Mental Health Care, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>3. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C. § 1983);<br>4. Unconstitutional Policies, Customs, Practices (Monell, 42 U.S.C. § 1983);<br>5. Supervisory Liability (Monell, 42 U.S.C. § 1983);<br>6. Negligence – Wrongful Death;<br>7. Negligence – Medical Malpractice;<br>8. Violation of California Government Code §845.6;<br>9. Violation of California Civil Code §52.1 (Tom Bane Act);<br>10. Declaratory Relief (28 U.S.C. § 2201);<br>11. Violation of 42 U.S.C §12101 et seq. (ADA); and |

12. Violation of 29 U.S.C §794(a)
(Rehabilitation Act)

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DAMAGES

**COME NOW** Plaintiffs ESTATE OF IRENE RIVERA, by and through successor in interest, R.R.; R.R., a minor, by and through Guardian Ad Litem, Bertha Rivera; BERTHA RIVERA, individually; and JOSE RIVERA, individually, and allege as follows:

### I.

### INTRODUCTION

1.      This civil rights action seeks to establish the true and unequivocal facts surrounding the in-custody death of Irene Rivera at the Kern County Sheriff's Office, Central Receiving Facility on September 10, 2023. This action also seeks to bring to public light the deliberate disregard for safety and protection carried out by the individual defendants in the present action.

2.      Irene Rivera was the loving mother of her infant daughter, R.R. In the short time Irene had with her daughter, her love was boundless. She dreamt of being there for all of R.R.'s firsts—her first laugh, her first words, her first steps. She would  have loved to witness her daughter grow into the person she was destined to become, to guide her through life's challenges, and celebrate her successes. Irene looked forward to the milestones of R.R.'s life and all the cherished family memories that would have been. Irene's death leaves a deep void in the lives of her mother, Bertha

Rivera, and father, Jose Rivera, and the pain of her absence is felt even more knowing how much she longed to share in the moments that must now unfold without her.

3.      In 2023, Defendant KERN COUNTY'S correctional facilities, including the KERN COUNTY SHERIFF'S OFFICE's Central Receiving Facility, Lerdo Justice Facility, Lerdo Pre-Trial Facility, Max/Med Security, and Minimum Security (hereinafter collectively "COUNTY Jails"), have resulted in eleven (11) in-custody deaths. The deaths include six (6) suicides and five (5) "natural cause" deaths. Irene Rivera's death is one of six (6) suicide deaths within the COUNTY Jails during the 2023 calendar year and was the ninth (9) death of eleven (11) total deaths that year.

4.      Long before Irene Rivera's death, each of the individually named Defendants from KERN COUNTY, KERN COUNTY SHERIFF'S OFFICE, and KERN COUNTY HOSPITAL AUTHORITY knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails.

5.      The Defendants' deliberate indifference towards inmates and detainees suffering from mental health issues resulted in dozens of suicides since 2008. Since 2008, twenty-two (22) inmates have died by suicide within the COUNTY Jails – six (6) of which occurred in 2023 alone.

6.      The individual defendants named in the present lawsuit were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths; the federal class action *Yeager, et al. v. Smith, et al.*, Case No. 1:87-cv-00493-REC (E.D. Cal.)(hereinafter the "*Yeager* Class Action") targeting the Kern County Sheriff's Department custody, medical and mental health staff's deliberate indifference to the safety and protection of pregnant and postpartum inmates; and through a through a voluntarily entered Settlement Agreement which required that the County of Kern remedy all of the deficiencies addressed in the *Yeager* class action.

7.      Despite this long history of complete disregard to inmate safety and protection, each of the individually named defendants in this lawsuit deliberately failed to take even modest actions to prevent in-custody deaths at the COUNTY Jails. Thus, by the time Irene Rivera was taken into custody and placed at the Central Receiving Facility, the jail was infested with endemic, ongoing and unabated risks of injury or death to inmates – risks which indeed resulted in Irene Rivera's death on September 10, 2023.

## II.

## JURISDICTION AND VENUE

8.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

9.      This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

10.      Venue is proper within the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

## III.

## PENDANT CLAIMS

11.      Plaintiffs presented their government claims on February 15, 2024. The government claims were rejected on March 25, 2024. As such, Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

12.      With respect to these supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1  claims as they arise from the same facts and circumstances which underlie the federal

2  claims.

3  **IV.**

4  **PARTIES**

5  **A. Plaintiffs**

6  13.    Decedent Irene Rivera (hereinafter also "Decedent") was a 31-year-old

7  loving mother of a young daughter, R.R., and the daughter of Bertha Rivera and Jose

8  Rivera. At the time of her death, she was a pretrial detainee who resided in the

9  County of Kern, California. The claims made by Plaintiff ESTATE OF IRENE

10  RIVERA, are brought by the successor in interest, R.R.

11  14.    Plaintiff R.R., a minor by and through her Guardian Ad Litem, Bertha

12  Rivera, is and was, at all times relevant hereto, a resident of the County of Kern,

13  California, and was the natural daughter of decedent Irene Rivera. Plaintiff R.R. was

14  two months old when her mother, Irene Rivera, died in-custody at the COUNTY

15  Jails. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§

16  377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death

17  actions. Plaintiff also brings her claims individually and on behalf of Decedent Irene

18  Rivera on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution,

19  federal and state civil rights law and California law.

20  15.    Plaintiff BERTHA RIVERA, is and was, at all times relevant hereto, a

21  resident of the County of Kern, California, and was the natural mother of decedent

22  Irene Rivera. Plaintiff brings these claims pursuant to California Code of Civil

23  Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and

24  wrongful death actions. Plaintiff also brings her claims individually and on behalf of

25  decedent Irene Rivera on the basis of 42 U.S.C. §§ 1983 and 1988, the United States

26  Constitution, federal and state civil rights law and California law. Plaintiff also brings

27  these claims as a Private Attorney General, to vindicate not only her rights, but

28  others' civil rights of great importance.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

16.    Plaintiff JOSE RIVERA, is and was, at all times relevant hereto, a resident of the County of Kern, California, and was the natural father of decedent Irene Rivera. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings his claims individually and on behalf of decedent Irene Rivera on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only his rights, but others' civil rights of great importance.

**B. Defendants**

17.    Defendant KERN COUNTY (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant KERN COUNTY SHERIFF'S OFFICE (hereinafter also "KCSO"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including KCSO employees, complied with the laws and the Constitutions of the United States and of the State of California.  Defendant COUNTY, through KCSO, is and was responsible for ensuring the protection and safety of all persons incarcerated at the KCSO correctional facilities, including the Central Receiving Facility (hereinafter "CRF"), Lerdo Justice Facility (hereinafter "LJF"), Lerdo Pre-Trial Facility (hereinafter "LPF"), Max/Med Security (hereinafter "MMS"), and Minimum Security (hereinafter "MS") (hereinafter collectively "COUNTY Jails").

18.    Defendant DONNY YOUNGBLOOD ("SHERIFF YOUNGBLOOD"), at all times mentioned herein, was the Sheriff of the KERN COUNTY SHERIFF'S OFFICE, the administrator of the COUNTY Jails, including CRF, and the custodian of the inmates within it; and the ultimate policy maker for the KCSO and the COUNTY Jails. SHERIFF YOUNGBLOOD and his custody staff, or those working

**FIRST AMENDED COMPLAINT FOR DAMAGES**

in the jail, DOES 1-10, were peace officers, sergeants, captains, lieutenants, commanders and undersheriffs, doctors, nurses and/or civilian employee agents, policy makers and/or agents and representatives of the COUNTY and the KCSO, as well as employees, agents and representatives of said Defendants. At all times relevant hereto, each of those named as DOES, were acting within the course and scope of their employment which was incidental to Defendants COUNTY and the KCSO's enterprise, and the wrongful acts hereinafter described flow from the very exercise of their authority. They are sued in their individual and official capacities. SHERIFF YOUNGBLOOD is sued both in his official and personal and individual capacity as a supervisory official for his own culpable action or inaction in the training, supervision, or control of his subordinates, or for his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed a reckless or callous indifference to the rights of others. SHERIFF YOUNGBLOOD's affirmative conduct involves his failure to ensure enforcement of policies, rules, or directives that set in motion a series of acts by others which he knew or reasonably should have known, would cause others to inflict the constitutional injury.

19.    Defendant COUNTY owns, operated, manages, directs and controls Defendant KERN COUNTY HOSPITAL AUTHOIRTY (hereinafter also "KCHA"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including the Kern Medical Correctional Medicine employees (hereinafter also "KMCM") which are assigned to provide medical care to inmates housed at the COUNTY jails, complied with the laws and the Constitutions of the United States and the State of California. Defendant COUNTY, through KCHA, is and was responsible for ensuring the safety of all persons incarcerated at the COUNTY Jails, including the CRF, and providing them appropriate medical and mental health treatment.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

20.     Defendant MATTHEW HARKEY, at all times mentioned herein, was employed by Defendant COUNTY as a Housing Unit Supervisor at the CRF, one of the highest-level supervisory positions. During the relevant time period, Defendant MATTHEW HARKEY was the Housing Unit Supervisor at the CRF and was primarily responsible for assisting with oversight and administration of the CRF, including ensuring the safety of the inmates housed therein. As the Housing Unit Supervisor, Defendant MATTHEW HARKEY was responsible for supervision of KCSO custody staff, and/or agents at the COUNTY Jails, and specifically CRF, and for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the KCSO custody staff alleged herein were committed. Defendant MATTHEW HARKEY also directly supervised Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, and DOES 1 through 6. At all times mentioned herein, Defendant was acting within the course and scope of that employment. The present defendant is sued in his individual capacity for damages. At all times relevant hereto, the present defendant was acting under the color of law.

21.     Defendant LEXI PRESSLEY, at all times mentioned herein, was employed by Defendant COUNTY as a corrections deputy at the KCSO, including the CRF and was acting within the course and scope of that employment. At all times mentioned herein, Defendant LEXI PRESSLEY was assigned to work at the C-Deck Court Holding Cell, C3-1 within the CRF, and was responsible for carrying out KCSO policies and procedures and for ensuring the safety of inmates at the Jail. Defendant LEXI PRESSLEY was assigned to work as a floor deputy on September 10, 2023, when Ms. Rivera was found unresponsive in her cell. The present defendant is sued in their individual capacity for damages. At all times relevant hereto, the present defendant was acting under the color of law.

22.     Defendant SAMUEL FLORES GONZALES, at all times mentioned herein, was employed by Defendant COUNTY as a corrections deputy at the KCSO,

including the CRF and was acting within the course and scope of that employment. At all times mentioned herein, Defendant SAMUEL FLORES GONZALES was assigned to work at the C-Deck Court Holding Cell, C3-1 within the CRF, and was responsible for carrying out KCSO policies and procedures and for ensuring the safety of inmates at the Jail. Defendant SAMUEL FLORES GONZALES was assigned to work as a floor deputy on September 10, 2023, when Ms. Rivera was found unresponsive in her cell. The present defendant is sued in their individual capacity for damages. At all times relevant hereto, the present defendant was acting under the color of law.

23.    Defendant MARK MILLER, at all times mentioned herein, was employed by Defendant COUNTY as a classification officer at the KCSO, and was acting within the course and scope of that employment. At all times mentioned herein, Defendant MARK MILLER was assigned to work within the Classification Unit of the COUNTY Jails, and was responsible for carrying out KCSO policies and procedures and for ensuring the safety of inmates at the Jail through the proper housing and classification of the inmates at the COUNTY Jails. The present defendant is sued in their individual capacity for damages. At all times relevant hereto, the present defendant was acting under the color of law.

24.    Defendant JULIUS QUILALA was at all times mentioned herein a treating medical professional for Irene Rivera in the COUNTY Jails and was employed by the COUNTY Correctional Health Services as a Registered Nurse, and was responsible for providing competent mental health and medical care, treatment and follow-up care to Irene Rivera. This Defendant is sued in this Defendant's individual capacity. At all times relevant hereto, this Defendant was acting in the course and scope of his/her employment with Defendants COUNTY OF KERN and KERN COUNTY HOSPITAL AUTHORITY, and this Defendant was acting under the color of law.

25.    Defendants KERN COUNTY, KERN COUNTY SHERIFF'S OFFICE, SHERIFF YOUNGBLOOD, and KERN COUNTY HOSPITAL AUTHORITY will hereinafter be referred to as the COUNTY DEFENDANTS.

26.    Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

27.    The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 10 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 10 include individual law enforcement personnel and medical personnel employed by the KCSO, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a resident of California. Upon information and belief, DOES 1 through 10 were and still are residents of the County of Kern, California. DOES 1 through 10 are sued in both their individual and official capacities.

28.    At all relevant times, DOES 7 and 8 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 7 and 8 were acting under color of law within the course and scope of their duties as employees for the COUNTY. They had supervisorial authority over DOES 1-10, and the COUNTY employees at the COUNTY Jails. DOES 7 and 8 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

29.     At all relevant times, DOES 9 and 10 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 9 and 10 were acting under color of law within the course and scope of their duties as employees for the KCSO and/or the COUNTY. They had supervisorial authority over DOES 1-10, and the employees of the KCSO. DOES 9 and 10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

30.     Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

31.     Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in

the conduct described herein, resulting in the deprivation of Plaintiffs' and decedent Irene Rivera's constitutional rights and other harm.

32.    Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

33.    In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

34.    In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

**V.**

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

35.    On September 10, 2023, Ms. Rivera was suffering from a mental health crisis when she was arrested by the Bakersfield Police Department and booked into the Kern County Sheriff's Office, Central Receiving Facility located at 1415 Truxtun Ave. Bakersfield, California 93301.

36.    At approximately 2:24 a.m., on this same date, Ms. Rivera was housed alone in the C-Deck Court Holding Cell, C3-1. Ms. Rivera was evaluated by Defendant Nurse JULIUS QUILALA and cleared to remain housed at the CRF. Upon information and belief, Defendant Nurse JULIUS QUILALA was responsible for conducting a medical assessment, screening and/or evaluation within two (2) hours of booking for postpartum inmates like Ms. Rivera.

37.    Indeed, according to KCSO's Policy H-100 and pursuant to the *Yeager* Class Action, postpartum inmates have the right to immediate medical attention, including attention for drug or alcohol treatment or withdrawal, and an immediate referral to a health care provider.

38.    Upon information and belief, Ms. Rivera met with Defendant MARK MILLER (Classification Deputy) upon booking and expressed concerns that less than three (3) months prior to arrest she had given birth to her infant daughter, R.R, and

therefore postpartum. Postpartum inmates, according to KCSO's Policy H-100, are defined as three (3) months or less from having given birth, miscarried, or aborted. KCSO custody staff are required to provide pregnant or postpartum inmates with a pink wrist band to alert those in charge that an inmate has been identified as pregnant or postpartum.

39.    Despite Ms. Rivera being less than three (3) months postpartum, and despite obvious signs that Ms. Rivera, an inmate-patient at the COUNTY Jails, suffered from mental health issues and substance abuse, Ms. Rivera was placed in a holding cell without any designation regarding her medical condition that would alert those in charge of Ms. Rivera's desperate need for a higher level of care, including monitoring, medical treatment, mental health treatment and follow-up care.

40.    At approximately 2:45 a.m., on September 10, 2023, Ms. Rivera is observed, on surveillance footage, wrapping a plastic trash bag around her neck. Ms. Rivera then proceeds to climb onto a bench located within her cell and steps off the bench with both feet suspended off the ground.

41.    At approximately 2:54 a.m., nearly ten (10) minutes later, Defendant Deputy PRESSLEY finds Ms. Rivera hanging in her cell. Defendant Deputies PRESSLEY and FLORES GONZALES subsequently enter the cell and cut Ms. Rivera down. Ms. Rivera ultimately did not respond to lifesaving measures and was pronounced dead at 3:26 a.m.

42.    Indeed, Defendant Deputies LEXI PRESSLEY and SAMUEL FLORES GONZALES had ample opportunity to observe clear signs of Ms. Rivera's acute suicidality given that Ms. Rivera was fashioning a noose around her neck which was captured by the surveillance camera. Yet, each of these Defendants were deliberately indifferent to Ms. Rivera's health and safety as she was left in her cell to die for approximately ten (10) minutes.

43.    Upon information and belief, Irene Rivera had been experiencing a medical emergency for an appreciable amount of time prior to her death.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

44.     Upon information and belief, due to the COUNTY Jails patterns and practices of not conducting proper and timely Title 15 welfare and safety checks, Irene Rivera's dire need for emergency medical intervention went unnoticed by the KCSO custody and medical staff, who were responsible for monitoring and ensuring the welfare of all inmates, including Irene Rivera.

45.     Irene Rivera was only thirty-one years old when she died on September 10, 2023, while she was in custody at the Central Receiving Facility.

46.     Plaintiffs timely and properly filed tort claims with the County of Kern pursuant to California Government Code sections 910, *et seq*., and this action is timely filed within all applicable statutes of limitation.

47.     This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

## VI.

## FACTUAL ALLEGATIONS COMMON TO *MONELL* AND SUPERVISORIAL CAUSES OF ACTION

48.     Based upon the principles established in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), Defendants are liable for all injuries sustained by Plaintiffs as set forth herein. To establish municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a plaintiff must prove: (1) that [the plaintiff] possessed a constitutional right of which she was deprived; (2) that the municipality had a policy/custom/practice; (3) that this policy/custom/practice amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy/custom/practice is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011). The policy/custom/practice "need only cause the constitutional violation; it need not be unconstitutional per se." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). Recognized paths to *Monell* liability include: (1) an unconstitutional custom, practice or policy behind the violation of rights; (2) a deliberately indifferent omission, such

as a failure to train or failure to have a needed policy; and (3) a final policy-maker's involvement in or ratification of the conduct underlying the violation of rights. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

**A. Defendant Supervisors Had Knowledge of Inadequacy and Delivery of Mental Health Care at the Kern County Jails and Failed to Take Corrective Action.**

49.    Prior to September 10, 2023, high level COUNTY supervisors, including SHERIFF YOUNGBLOOD, knew or should have known of a history of years of notice of ongoing failure to provide inmates indicated and timely reasonable medical/mental health care, knew or should have known of inadequate and/or incompetent staffing, insufficient and inadequate cells and beds, incompetent and inadequate provision of health care and delivery thereof, denying access to outside hospitals or other mental health programs, failure to take corrective measures, including ignoring judicial orders to abate or take corrective action regarding medical and mental health care to inmates and detainees, notice from quality assurance and death reviews, from litigation alleging failure to provide reasonable medical and mental health care, and from publications of endemic, ongoing and unabated risks of injury or death to inmates. The number of lawsuits against the COUNTY and throughout the state and the evidence available from those actions is troubling and demonstrative of Defendants' years of deliberate indifference to known ongoing hazards to ill detainees and their failure to take corrective action.

50.    As a preamble, between 2018 and 2023, the COUNTY had notice of a slew of cases revealing constitutional violations of inmates' rights to reasonable medical care. Due diligence would have revealed these breaches of constitutional mandates:

51.    In 2023, Defendant KERN COUNTY SHERIFF'S OFFICE Jails have resulted in eleven (11) in-custody deaths. The deaths include six (6) suicides and five (5) natural cause deaths.

1    52.    Irene Rivera's death is one of six (6) suicide deaths within the COUNTY

2    Jails during the 2023 calendar year and was the ninth (9) death of eleven (11) total

3    deaths that year.

4    53.    The Defendants' deliberate indifference towards inmates suffering from

5    mental health issues resulted in several suicides since 2008. From January 2008

6    through December 2023, twenty-two (22) inmates have died by suicide within the

7    COUNTY Jails:

8    54.    On July 29, 2020, pretrial detainee Michael Shinsky died by suicide due

9    to the events that occurred while in custody at the Kern County Sheriff's Office

10    Central Receiving Facility. Mr. Shinsky was found by another incarcerated person

11    hanging by a bedsheet in the shower that morning. Life saving measures were

12    attempted and Mr. Shinsky was stabilized. He was then transported to Adventist

13    Health Bakersfield Emergency Room. Mr. Shinsky was then pronounced dead on

14    July 29, 2020, at 34 years old. He was only incarcerated for three days before this

15    incident occurred.

16    55.    On September 5, 2020, Jose Rodriguez was found alone and

17    unresponsive in his cell at the Kern County Sheriff's Office Lerdo Pre-Trial Facility

18    from an apparent suicide. Mr. Rodriguez was only 24 years old at the time of his

19    death. The deputy who found Mr. Rodriguez entered the cell and cut the noose,

20    causing him to fall and strike the right side of his head. Mr. Rodriguez was then

21    transported to Adventist Health Bakersfield where he was declared brain dead. On

22    September 8, he was pronounced dead. Mr. Rodriguez was held at the Kern County

23    Sheriff's Office Lerdo Pre-Trial Facility for only 18 days before this incident

24    occurred.

25    56.    On September 6, 2020, pretrial detainee Angel Barrios died by suicide

26    while being held at the Kern County Sheriff's Office Lerdo Pre-Trial Facility. Mr.

27    Barrios was observed hanging from a ligature from his bed. A sheet was tied to the

28    top metal portion of the bunk bed and around his neck. Mr. Barrios was 27 years old

at the time and left a handwritten note expressing his love for his family. He had been incarcerated for only three weeks prior to his death. Mr. Barrios was pronounced dead at the scene despite resuscitative efforts.

57.    On December 26, 2020, pretrial detainee Marvinesha Johnson was found unresponsive while in her cell at the Kern County Sheriff's Office Lerdo Pre-Trial Facility. Her cellmate became concerned when she noticed that Ms. Johnson was not snoring while she slept, as she typically did. Ms. Johnson was found on her left side unresponsive, with the cause of death deemed as Sertraline (Zoloft) and Other Drug Intoxication. Ms. Johnson was pronounced dead at the scene despite resuscitative efforts, at 29 years old.

58.    On September 23, 2021, Erick Diaz, a 30-year-old male, was found on his cell floor unresponsive at the Kern County Sheriff's Office Lerdo Pre-Trial Facility. Immediately upon his booking only three months prior, Mr. Diaz was placed alone in administrative segregation due to his mental health status. He was also pending clearance to determine if he was competent to stand trial. On the day of his passing, Mr. Diaz stayed in his cell room and never came out. During medical rounds, he stayed in his bunk and did not get up. Upon being found unresponsive that evening, resuscitative efforts were administered but Mr. Diaz was pronounced dead at the scene. Brownish purge fluid was observed underneath Mr. Diaz's head by the dispatcher on scene. According to the autopsy report he was found with "bilateral ventral wrist scars which are crisscrossing and average between 1 or 2 inches on both wrists." The COUNTY's Medical Examiner determined Mr. Diaz's mechanism of death was Hypertensive Heart Disease, despite these concerning behaviors.

59.    On January 20, 2023, Zion Xiong died by suicide at the Kern County Sheriff's Office Lerdo Pre-Trial Facility. Mr. Xiong was found unresponsive and alone in his cell with a white sheet tied around his neck and the sheet tied to the top bunk. He was slightly leaning forward with his knees bent and his feet on the cemented floor. Despite resuscitative measures, Mr. Xiong was pronounced dead at

1  the scene. Mr. Xiong was 42 years old at the time of his death and was incarcerated

2  for less than a month before his passing.

3      60.    On March 4, 2023, Stephen Ingle (our Decedent) was found

4  unresponsive at the Kern County Sheriff's Office Central Receiving Facility. Only 3

5  days after he was booked, he was found hanging from a shower rod with a jail bed

6  sheet tied around his neck, with the other end tied to the shower curtain rod. Mr. Ingle

7  was transferred to the hospital on March 4, still unresponsive. His family was not

8  notified until March 9. Nurses informed his family that he sustained several injuries

9  including: a skull fracture, eight staples in his head, and two black eyes. In the

10 Autopsy Report it is indicated that there is a "5/8 inch ovoid red purple bruise on the

11 lower right anterior neck just above the clavicle." Mr. Ingle remained in the hospital

12 for twenty-five (25) days, and was transferred to hospice, where he passed after one

13 (1) day. He was 38 years old when he passed away and was only incarcerated for 3

14 days before the incident that would lead to his death on March 29, 2023. The manner

15 of death was classified as asphyxia due to hanging.

16     61.    On May 3, 2023, pretrial detainee Derrick Austin died by suicide while

17 in custody at the Lerdo Justice Facility.  The KCSO custody staff and medical staff

18 were aware that Derrick Austin had a history of multiple indicators of elevated

19 suicide risk.  Indeed, Mr. Austin displayed gravely concerning suicidal behavior and

20 emotional distress throughout his 2023 incarcerations at the COUNTY Jails, which

21 included violently banging his head against the cell wall causing his head to bleed

22 and swell, threatening to commit suicide by various means, and tying various forms

23 of nooses around his neck. Indeed, the week prior to his death, the court determined

24 that Mr. Austin needed to be placed in State Hospital Evaluation Competency due to

25 the custody and medical staff's obvious inability to care for Mr. Austin.  Tragically,

26 the day of his death, the KCSO floor deputy failed to conduct a proper and adequate

27 Title 15 welfare check.  Despite the fact that Mr. Austin was clearly in distress and

28 suffering from a medical emergency, the KCSO floor deputy ignored Mr. Austin.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

When the KCSO custody staff finally opened Mr. Austin's cell door and went into his cell, they found Mr. Austin dead with the elastic waist band of his boxers around his throat.

62.     On April 21, 2023, pretrial detainee Shai Rogers died by suicide while in custody at the Lerdo Justice Facility. Mr. Rogers was found unresponsive on the floor next to the telephone, with the phone cord wrapped around his neck. He was last seen alive by control staff walking out of his cell into the phone area, when he proceeded to sit in a seated position. Mr. Rogers arrived at the Lerdo Justice Facility on March 3, 2023, and was still awaiting trial. Upon his arrival, he made several suicidal statements to staff and was placed on a suicide watch. According to the jail records, he attempted to hang himself at the Central Receiving Facility on March 3, 2023. He had a history of mental illness including schizophrenia and depression. Despite resuscitative measures, he was pronounced dead at the scene. Mr. Rogers was 34 years old at the time of his passing.

63.     On September 2, 2023, pretrial detainee Matthew Richards was found unresponsive in his cell at the Kern County Sheriff's Office Mojave Substation Jail. Mr. Richards was found with a shoestring tied around his neck from the top bunk of his cell. His feet were touching the floor, and he was slouching in a forward direction when he was located. The deputy on scene could not recall the exact time the last check was conducted to check on the well-being of incarcerated persons such as Mr. Richards. Mr. Richards was then transferred to the Antelope Valley Medical Center where he was pronounced dead on September 4, 2024. This was only 2 days after he was arrested and booked. His cause of death was found to be asphyxia due to hanging. Mr. Richards was 31 years old at the time of his passing.

64.     On September 10, 2023, Irene Rivera died by suicide at the Kern County Central Receiving Facility. Ms. Rivera was found hanging with a plastic bag wrapped around her neck while the bag was tied to the upper part of the bars in the cell. Despite resuscitative measures being performed, Ms. Rivera was pronounced dead at

1  the scene. Ms. Rivera was arrested that same day, only an hour and a half prior to her

2  passing. She was 31 years old at the time of her passing and had given birth to a child

3  two months prior to her death.

**B. The County Defendants' Indifference to the Constitutional Violations and Failures Permeating the COUNTY Jails Affecting Inmates with Mental Health Issues.**

65.    Defendant SHERIFF YOUNGBLOOD, through his supervision of the COUNTY's medical staff, were responsible for the provision of medical and mental health services at the COUNTY Jails, and as such, were responsible for the following at the COUNTY Jails:

    a.  Staffing for the jail's medical and mental health units;

    b.  Administrative structure, medical direction and operational oversight for the medical and mental health units;

    c.  Oversight of the day-to-day operations of the health services programs at the jail;

    d.  Design and implementation of a suicide prevention program, including the related policies and procedures to fully and safely carry out such program;

    e.  Development, implementation and revision policies and procedures which relate to the overall provision of mental health and medical services, including the operational aspects of such services and compliance with regulations and statutes;

    f.  Development, implementation and revision policies, procedures and practices for the training of custody, medical and mental health staff at the jail;

    g.  Identifying of all unsafe or unhealthy conditions within the jail facilities related to the provision of medical and mental health services, and proposing of corrective measures of such conditions in a timely manner;

**FIRST AMENDED COMPLAINT FOR DAMAGES**

h.   Provide continuous training to detention staff regarding the screening of inmates, identification of mentally ill inmates, risk recognition, and suicide prevention.

66.    Defendants COUNTY, KCSO, SHERIFF YOUNGBLOOD, and the COUNTY custody, medical and mental health staff, and each of them, had been on notice for years that their provision of medical and mental health treatment to inmates at the COUNTY Jails was inadequate and resulted in needless harm and death.

67.    Defendants COUNTY, KCSO, KCHA, SHERIFF YOUNGBLOOD, and the COUNTY custody, medical and mental health staff, and each of them, were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths; the federal class action *Yeager, et al. v. Smith, et al.*, Case No. 1:87-cv-00493-REC (E.D. Cal.)(hereinafter the "*Yeager* Class Action") targeting the Kern County Sheriff's Department custody, medical and mental health staff's deliberate indifference to the safety and protection of pregnant and postpartum inmates; and through a through a voluntarily entered Settlement Agreement which required that the County of Kern remedy all of the deficiencies addressed in the *Yeager* class action.

68.    Indeed, the federal class action lawsuit *Yeager, et al. v. Smith, et al.*, Case No. 1:87-cv-00493-REC (E.D. Cal.) was filed against Defendants COUNTY OF KERN on September 2, 1987. The class action alleged that the COUNTY failed to provide minimally adequate medical and mental health care to the pregnant and postpartum inmates incarcerated in its jails, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

///

///

///

///

///

**FIRST AMENDED COMPLAINT FOR DAMAGES**

69.    Notably, in 2006, SHERIFF YOUNGBLOOD remarked that it was cheaper for taxpayers that inmates be "cripple[d]" in custody rather than "kill[ed]" in custody.[1]

70.    Based on the aforementioned, Defendants COUNTY, KCSO, KCHA, SHERIFF YOUNGBLOOD, and the COUNTY custody, medical and mental health staff, and each of them, knew of the dangers that posed a risk to decedent Irene Rivera's safety, yet disregarded these dangers resulting in her death.

## VII.

## PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS

**(Against individual Defendants SHERIFF DONNY YOUNGBLOOD, LEXI PRESSLEY, SAMUEL FLORES GONZALES, MATTHEW HARKEY, MARK MILLER, JULIUS QUILALA and DOES 1-10)**

71.    Each Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.

72.    Long before Irene Rivera's death, Defendants SHERIFF YOUNGBLOOD, LEXI PRESSLEY, SAMUEL FLORES GONZALES, MATTHEW HARKEY, MARK MILLER, JULIUS QUILALA and DOES 1 through 10 knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails.

73.    Defendants SHERIFF YOUNGBLOOD, LEXI PRESSLEY, SAMUEL FLORES GONZALES, MATTHEW HARKEY, MARK MILLER, JULIUS QUILALA and DOES 1 through 10 were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths, as detailed in Section VI above.

74.    Despite this long history of complete disregard to inmate safety and protection, Defendants SHERIFF YOUNGBLOOD have deliberately failed to take

---

[1] Kern County Sheriff caught on tape saying it costs less to kill suspects, Kern County Sheriff caught on tape saying it costs less to kill suspects - ABC7 San Francisco (abc7news.com).

**FIRST AMENDED COMPLAINT FOR DAMAGES**

even modest actions to prevent in-custody deaths at the COUNTY Jails which have for a very long time been infested with endemic, ongoing and unabated risks of injury or death to inmates.

The Defendant officers, and each of them, acted with malice and oppression and with a conscious disregard for Plaintiffs' rights, making the individual defendants, including DOES 1-10, liable for punitive damages. **VIII. PRE-DEATH PAIN AND SUFFERING DAMAGES ALLEGATIONS (Against Defendants SHERIFF DONNY YOUNGBLOOD, LEXI PRESSLEY, SAMUEL FLORES GONZALES, MATTHEW HARKEY, MARK MILLER, JULIUS QUILALA and DOES 1-10)** Pursuant to *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014), Plaintiff ESTATE OF IRENE RIVERA seeks damages for Ms. Rivera's own pre-death pain and suffering prior to her death. Such damages are also recoverable under Plaintiffs' state law claims pursuant to Code of Civil Procedure Section 377.34(b). Based on the aforementioned factual summary, there can be no question that Ms. Rivera suffered pre-death pain and suffering during her incarceration at the COUNTY Jails in addition to the excruciating pain that came from asphyxiating.[2] Plaintiffs submit that the period for which pre-death pain and suffering began to occur was the moment Ms. Rivera stepped foot into the COUNTY Jails following her arrest.

**VIII.**

**<u>FIRST CAUSE OF ACTION</u>**

**Failure to Protect from Harm,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of IRENE RIVERA**

---

[2] Asphyxiation is not an instantaneous death. Asphyxiation is tortuous and causes immense pain and suffering before actual death.

**As Against Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MATTHEW HARKEY, MARK MILLER, JULIUS QUILALA and DOES 1 through 10**

75.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

76.    Defendants COUNTY, KCSO, LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10 were on notice that their deficient policies, procedures, and practices alleged herein created substantial risk of serious harm to an inmate in decedent Irene Rivera's position.

77.    Each Defendant could have taken action to prevent unnecessary harm to decedent Irene Rivera but refused or failed to do so.

78.    Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10, and each of them, made various intentional decisions regarding Ms. Rivera's condition when she was confined in the COUNTY Jails, including CRF. Given Ms. Rivera's mental state, Defendants' placement of Ms. Rivera in certain conditions placed Ms. Rivera at substantial risk of suffering serious harm. Instead of ensuring that Ms. Rivera could not self-mutilate or self-harm, Defendants did not take any reasonable available measures to abate or reduce the risks Ms. Rivera faced, even though any reasonable person in the circumstances would have appreciated the high degree of risk involved, or at the very least done something to protect Ms. Rivera from harm. Given such failures, the consequences of the Defendant's conduct were obvious and by not taking such measures, Ms. Rivera suffered significant suffering and ultimately, died.

79.    Furthermore, by policy, procedure, and practice, Defendants COUNTY, KCSO, LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10 deliberately disregarded the hazards and risks posed to persons incarcerated at the CRF, as alleged above.  Defendants failed

1  to take any reasonable steps to mitigate the obvious and well-known risks of harm
2  that was attendant to housing decedent Irene Rivera at CRF.

3      80.    Defendants COUNTY, KCSO, LEXI PRESSLEY, SAMUEL FLORES
4  GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10 were
5  on notice that their policies, procedures, and practices for monitoring inmates at the
6  COUNTY Jails, including CRF, were inadequate and gave rise to a substantial risk of
7  serious harm.

8      81.    Defendants, including SHERIFF YOUNGBLOOD, MATTHEW
9  HARKEY and DOES  8 through 10, knew that deputies routinely failed to conduct
10 required welfare and safety checks at the COUNTY Jails, including CRF, and failed
11 to take sufficient actions to correct this problem and ensure that necessary checks
12 were performed.

13     82.    Defendants, including SHERIFF YOUNGBLOOD,  MATTHEW
14 HARKEY and DOES 8 through 10, failed to take corrective action, discipline, or
15 remove the command staff at the COUNTY Jails, including CRF, who, upon
16 information and belief, directed the deputies to violate the COUNTY's safety check
17 policies. Defendants SHERIFF YOUNGBLOOD and DOES 8 through 10 ratified
18 their actions, and the practices used under their watch.

19     83.    Defendants, including SHERIFF YOUNGBLOOD, MATTHEW
20 HARKEY and DOES 8 through 10, failed to properly train and supervise KCSO
21 custody, medical and mental health staff regarding policies, procedures, and practices
22 necessary for the protection of inmates from risks and hazards existing within the
23 COUNTY Jails, including CRF.

24     84.    Defendants, including SHERIFF YOUNGBLOOD, MATTHEW
25 HARKEY and DOES 8 through 10, failed to correct their policies, procedures, and
26 practices despite notice of significant and dangerous problems evidences deliberate
27 indifference to the inmates in their care.

28

**FIRST AMENDED COMPLAINT FOR DAMAGES**

85.    Defendants, including SHERIFF YOUNGBLOOD, MATTHEW HARKEY and DOES 8 through 10, ratified Defendants DOES's actions and inactions amounting to constitutional violations.

86.    Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10's failure to conduct the required safety check of decedent Irene Rivera's holding cell on the date of her death evidences deliberate indifference to the risk of harm to decedent Irene Rivera.

87.    Defendants SHERIFF YOUNGBLOOD, MATTHEW HARKEY and DOES 8 through 10 ratified Defendants DOES's failure to conduct safety checks.

88.    As a direct and proximate result of Defendants' conduct, the civil rights of Irene Rivera, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent Irene Rivera experienced physical pain, severe emotional distress, and mental anguish, as well as loss of her life and other damages alleged herein.

89.    Defendants subjected decedent Irene Rivera to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

90.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiffs herein, sustained injuries and damages.

91.    The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendant COUNTY.

92.    Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

///

///

///

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IX.

## SECOND CAUSE OF ACTION

**Failure to Provide Medical Care,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of IRENE RIVERA As Against Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10**

93.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

94.    By the actions and omissions described above, Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10, as alleged herein, violated 42 U.S.C. § 1983, depriving decedent Irene Rivera, through Plaintiffs herein, of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution: Decedent's right to be free from deliberate indifference to Irene Rivera's serious medical and mental health needs while in custody as secured by the Fourteenth Amendment.

95.    By the actions and omissions described above, Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10, as alleged herein, including but not limited to their failure to provide decedent Irene Rivera with appropriate emergency medical and mental health care, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide emergency medical and mental health care and life saving care to persons in their custody, constituted deliberate indifference to Irene Rivera's serious medical and mental health needs, health, and safety.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

96.    Instead of providing Irene Rivera with the medical care she needed, Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10, and each of them, denied Irene Rivera medical care and put her in substantial risk of suffering serious harm.

97.    Clearly, given that Irene Rivera was suicidal, Defendants DOES 1 through 10, and each of them, did not take reasonable measures to reduce such risk even though any reasonable person would have appreciated the high risks involved in the situation. By failing to take such reasonable measures, it was obvious and foreseeable that Irene Rivera would commit suicide. Therefore, by not taking such measures, Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10, and each of them, caused Irene Rivera's death.

98.    As a direct and proximate result of Defendants' conduct, the civil rights of Irene Rivera, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent Irene Rivera experienced physical pain, severe emotional distress, and mental anguish, as well as loss of her life and other damages alleged herein.

99.    Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

100.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiff herein, sustained injuries and damages.

101.    The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

102.    Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

# X.

## THIRD CAUSE OF ACTION

**Deprivation of the Right to Familial Relationship with Decedent,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(42 U.S.C. § 1983)**

**By Plaintiffs R.R., BERTHA RIVERA, and JOSE RIVERA As Against Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10**

103.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

104.    The aforementioned acts and/or omissions of Defendants DOES 1 through 10 in being deliberately indifferent to decedent Irene Rivera's protection, safety, and serious medical and mental health needs, violating decedent Irene Rivera's constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Irene Rivera deprived Plaintiffs R.R., BERTHA RIVERA, and JOSE RIVERA of their liberty interests in the parent-child relationship in violation of their substantive due process rights as defined by the Fourteenth Amendment of the Constitution.

105.    All of the acts of Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and  DOES 1 through 10 and the persons involved were done under color of state law.

106.    The acts and omissions of each Defendant deprived Plaintiffs R.R., BERTHA RIVERA, and JOSE RIVERA of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiffs of their rights to a parent-child relationship with decedent Irene Rivera without due process of law by their deliberate indifference in denying Irene Rivera protection and safety while

incarcerated at CRF and access to medical care while suffering a medical emergency at CRF.

107.   The conduct of Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10, and each of them, shocks the conscience because placing Irene Rivera in such a despicable condition, ignoring her medical condition, and refusing to provide medical was done with a purpose to harm unrelated to any law enforcement purpose or done with deliberate indifference. The conduct shocks the conscience in violation of the Fourteenth Amendment.

108.   Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10 and the other involved agents and employees acted pursuant to expressly adopted official policies or longstanding practices or customs of the COUNTY and KCSO. These include policies and longstanding practices or customs of failing to provide persons in custody who are experiencing medical emergencies access to medical care as stated above and incorporated herein.

109.   In addition, the training policies of the COUNTY and KCSO were not adequate to train its deputies, agents and employees to handle the usual and recurring situations with which they must deal with, including but not limited to encounters with individuals in custody who are experiencing medical emergencies. These Defendants and each of them knew that its failure to adequately train its COUNTY custody, medical and mental health staff, including other agents and employees, to interact with individuals suffering from medical emergencies made it highly predictable that its custody, medical and mental health staff would engage in conduct that would deprive persons such as decedent Irene Rivera, and thus Plaintiffs R.R., BERTHA RIVERA, and JOSE RIVERA, of their rights. These Defendants were thus deliberately indifferent to the obvious consequences of their failure to train their deputies, agents and employees adequately.

110.    Defendants COUNTY and KCSO's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiffs R.R., BERTHA RIVERA, and JOSE RIVERA and decedent Irene Rivera by each individual Defendant's official policies and/or longstanding practices or customs are so closely related to Irene Rivera's injuries and death and thus the deprivation of the rights of Plaintiffs as to be the moving force causing those injuries.

111.    Defendants SHERIFF YOUNGBLOOD, final policymakers for the COUNTY and KCSO, ratified the actions and omissions of Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10, all of whom were custody, medical and mental health staff at the COUNTY Jails, including CRF, in that they had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

112.    As a direct and proximate result of Defendants' conduct, the civil rights of Irene Rivera, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent Irene Rivera experienced physical pain, severe emotional distress, and mental anguish, as well as loss of her life and other damages alleged herein.

113.    Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

114.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages.

115.    The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendants COUNTY.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

116.    Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## XI.

## FOURTH CAUSE OF ACTION

**Municipal Policies, Customs, Practices Causing Constitutional Violations**

**(*Monell* - 42 U.S.C. § 1983)**

**By Plaintiff Estate of IRENE RIVERA**

**As Against Defendants KERN COUNTY, KERN COUNTY SHERIFF'S OFFICE, and KERN COUNTY HOSPITAL AUTHORITY**

117.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

118.    In *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities were "persons" under § 1983 and thus could be held liable for causing a constitutional deprivation.3 *Id.* at 690, 98 S.Ct. 2018. The Court explained that while a municipality may not be held liable under § 1983 for the torts of its employees on a theory of respondeat superior, liability may attach where the municipality *itself* causes the constitutional violation through the execution of an official policy, practice or custom. *Id.* at 690–691, 98 S.Ct. 2018.[3]

119.    At all times relevant hereto, the COUNTY custody, medical and mental health staff were required to adhere to and enforce the following policy and procedures:

    a.    All COUNTY custody, medical and mental health staff must consider suicide prevention as one of the highest priorities of service within the correctional setting;

    b.    All must work together to identify inmates at risk for suicide;

---

[3] *See Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) ("These alleged constitutional deprivations were not suffered as a result of actions of the individual officers, but as a result of the collective inaction of the Long Beach Police Department.").

**FIRST AMENDED COMPLAINT FOR DAMAGES**

c.      All COUNTY custody, medical and mental health staff will have an outlined program for responding to suicidal individuals;

d.      All COUNTY custody, medical and mental health staff must learn about an inmates' high-risk periods immediately upon admission to a facility;

e.      All COUNTY custody, medical and mental health staff must learn about an inmates' high-risk periods after adjudication, when the inmate is returned to a facility from court;

f.      All COUNTY custody, medical and mental health staff must learn about an inmate's high-risk periods following the receipt of bad news regarding self or family;

g.      All COUNTY custody, medical and mental health staff must learn about an inmates' high-risk periods after suffering from some type or form of humiliation, rejection or abuse;

h.      All COUNTY custody, medical and mental health staff will review information of newly arriving inmates in this institution concerning issues related to suicide;

i.      All COUNTY custody, medical and mental health staff conducting the intake personal screen will be continuously alert to suicidal behavior;

j.      All COUNTY custody, medical and mental health staff will train their staff who work with inmates to recognize verbal and behavioral cues that indicate the potential for suicide;

k.      All COUNTY custody, medical and mental health staff who recognize an inmate as being potentially suicidal are to request immediate evaluation of the patient;

l.      All assessments of potentially suicidal inmates are to be conducted by qualified mental health professionals, trained to determine an inmate's level of suicide risk;

**FIRST AMENDED COMPLAINT FOR DAMAGES**

m.   Inmates who have been determined to be suicidal should be placed/housed according to institutional policy and procedures for the monitoring of such individuals within the correctional setting;

n.   Regular documented supervision should be maintained;

o.   Inmates who have been determined to be suicidal should be placed/bound in the appropriate acute mental health housing;

p.   Suicidal inmates should not be housed alone, or left alone, unless constant supervision can be maintained. If constant supervision cannot be provided when needed, the inmate should be housed with another resident or in a dormitory and monitored by video camera by custody staff;

q.   The rooms should be as nearly suicide proof as possible and constant supervision by a staff member is preferable;

r.   The procedures for referring potentially suicidal inmates and attempted suicides to mental health care providers or facilities should be clearly outlined;

s.   Clear, current and accurate information regarding an inmate must be communicated between health care personnel and correctional personnel pursuant to the procedures of communication;

t.   The intervention plan on how to handle a suicide that is in progress, including appropriate first aid measures, should be clearly outlined;

u.   Procedures for notifying correctional administrators, outside authorities and family members of potential, attempted or completed suicides will be in place;

v.   Procedures for documenting the identification and monitoring of potential or attempted suicides will be detailed, as well as procedures for reporting a completed suicide;

**FIRST AMENDED COMPLAINT FOR DAMAGES**

w.    The suicide plan should specify the procedure for medical administrative review if a suicide does occur; and

x.    A formal psychiatric/suicide review should take place following all successful suicides, or significant suicide attempts.

120.   The unconstitutional actions and/or omissions of Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY, KCSO, and KCHA on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY, KCSO, and KCHA, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY, KCSO, and KCHA:

a.    To deny inmates access to timely, appropriate, competent, and necessary care for serious medical and mental health needs, requiring such inmates in crisis to remain untreated in jail instead of providing for their emergency medical needs;

b.    To allow and encourage deputies doing regular cell checks on inmates, including inmates housed in safety cells and administrative segregation cells, to fail to document their actual observations of the inmate's condition and status, in violation of the COUNTY's written policies and state law;

c.    To allow and encourage inadequate and incompetent medical and mental health care for jail inmates and arrestees;

d.    To hire, retain and contract for obviously inadequate medical and mental health care for jail inmates and arrestees, including creating financial incentives for custody, medical and mental health staff not to send inmates with emergency medical needs to a hospital;

e. To allow, encourage, and require medical and mental health care staff, including licensed vocational nurses and registered nurses, to work outside their legal scope of practice and without appropriate supervision;

f. To fail to train custody staff that medical and mental health care staff, including licensed vocational nurses, are not competent to assess or decide inmates' medical conditions, medical needs, or whether the inmate should be permitted to remain in the jail versus being sent to a hospital;

g. To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised medical and mental health care staff to assess inmates' medical condition, needs, and treatment, including to decide whether or not to provide inmates with necessary emergency care and hospitalization, including psychiatric hospitalization;

h. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical and mental health crisis;

i. To cover up violations of constitutional rights by any or all of the following:

    i. By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical and mental health care at the jail;

    ii. By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custody, medical and mental health staff;

    iii. By turning a blind eye to custody, medical and mental health staff who direct, aid, and/or assist with the distribution of hazards, including illicit drugs, into the COUNTY Jails; and

**FIRST AMENDED COMPLAINT FOR DAMAGES**

iv.    By allowing, tolerating, and/or encouraging custody, medical and mental health staff to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

j.    To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, COUNTY personnel, custody, medical and mental health staff at the jail whereby an officer or member of the KCSO custody and/or CHS medical/mental health staff does not provide adverse information against a fellow officer, or member;

k.    To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (j) above, with deliberate indifference to the rights and safety of inmates and detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

121.    The unconstitutional actions and/or omissions of Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10, as well as other officers employed by or acting on behalf of the COUNTY, KCSO, and KCHA, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the COUNTY, KCSO, and KCHA, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the COUNTY, KCSO, and KCHA, including SHERIFF YOUNGBLOOD:

a.    To fail to properly and adequately hire, train, supervise, and monitor custody, medical and mental health staff at the jails;

**FIRST AMENDED COMPLAINT FOR DAMAGES**

b.   To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical and mental health crisis;

c.   To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical and mental health crisis;

d.   To cover up violations of constitutional rights by any or all of the following:

    i.   By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical and mental health crisis;

    ii.   By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

    iii.   By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e.   To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f.   To allow, tolerate, and/or encourage a "code of silence" among custody, medical and mental health staff at the COUNTY jails whereby custody, medical and mental health staff does not provide adverse information against one another;

**FIRST AMENDED COMPLAINT FOR DAMAGES**

g. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (f) above, with deliberate indifference to the rights and safety of inmates and detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

122. Defendants COUNTY, KCSO, KCHA, through their employees and agents, and through their policy-making supervisors, SHERIFF YOUNGBLOOD, MATTHEW HARKEY and DOES 8 through 10, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10, and other COUNTY, KCSO, and KCHA personnel, with deliberate indifference to the constitutional rights of decedent Irene Rivera, Plaintiffs and others in similar positions, as described above, and therefore, those rights thereby violated.

123. The unconstitutional actions and/or omissions of Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10, and other COUNTY custody, medical and mental health staff, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY, KCSO, and KCHA, including Defendants SHERIFF YOUNGBLOOD, MATTHEW HARKEY and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY, KCSO, and KCHA and that such policymakers have direct knowledge of the fact that the death of Irene Rivera was the result of deliberate indifference to her rights to be protected and safe while in the custody of the COUNTY/KCSO, and her rights to have access to medical care when suffering a medical emergency.

124.   Notwithstanding this knowledge, the authorized policymakers within the COUNTY, KCSO, and KCHA have approved of the conduct and decisions of Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Irene Rivera. By so doing, the authorized policymakers within the COUNTY, KCSO, and KCHA have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF YOUNGBLOOD, MATTHEW HARKEY and DOES 8 through 10, and other policy-making officers for the COUNTY, KCSO, and KCHA were and are aware of a pattern of misconduct and injury caused by COUNTY custody, medical and mental health staff similar to the conduct of Defendants described herein, but failed to discipline culpable custody, medical and mental health staff and failed to institute new procedures and policy within the COUNTY, KCSO, and KCHA.

125.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY, KCSO, and KCHA were a moving force and/or a proximate cause of the deprivations of decedent Irene Rivera's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected decedent Irene Rivera to their wrongful conduct, depriving decedent Irene Rivera of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Irene Rivera, Plaintiffs and others would be violated by their acts and/or omissions.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

126.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY, KCSO, and KCHA, as described above, decedent Irene Rivera suffered serious injuries and death, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY, KCSO, and KCHA.

## XII.

### FIFTH CAUSE OF ACTION

**Supervisory Liability Causing Constitutional Violations**

**(42 U.S.C. § 1983)**

**By Plaintiff Estate of IRENE RIVERA**

**As Against Defendants SHERIFF YOUNGBLOOD, MATTHEW HARKEY and DOES 8 through 10**

127.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

128.   At all material times, SHERIFF YOUNGBLOOD, MATTHEW HARKEY and DOES 8 through 10 had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the COUNTY and KCSO.

129.   Defendants SHERIFF YOUNGBLOOD, MATTHEW HARKEY and DOES 8 through 10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10, and other COUNTY and KCSO personnel, with deliberate indifference to Plaintiffs', decedent Irene Rivera's, and others' constitutional rights, which were thereby violated as described above.

130.   As supervisors, Defendants SHERIFF YOUNGBLOOD, MATTHEW HARKEY and DOES 8 through 10 each permitted and failed to prevent the

41

unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while incarcerated at CRF and the rights to the serious medical and mental health needs of decedent Irene Rivera. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive decedent Irene Rivera of rights, or knew his or her subordinates were engaging in acts likely to deprive decedent Irene Rivera of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate decedent Irene Rivera's rights, and in fact did cause the violation of decedent Irene Rivera's rights. (*See*, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of decedent Irene Rivera' rights.

131.    The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY and KCSO, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY and KCSO, including Defendants SHERIFF YOUNGBLOOD, MATTHEW HARKEY and DOES 8 through 10, respectively, with deliberate indifference to Plaintiff's, decedent Irene Rivera's, and others' constitutional rights, which were thereby violated as described above.

132.    The unconstitutional actions and/or omissions of Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10, and other COUNTY and KCSO personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and KCSO, including Defendants SHERIFF YOUNGBLOOD,

MATTHEW HARKEY and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants SHERIFF YOUNGBLOOD, MATTHEW HARKEY and DOES 8 through 10 and that such Defendant-policymakers have direct knowledge of the fact that the death of decedent Irene Rivera was not justified or necessary, but represented deliberate indifference to her rights to be protected and safe while in the COUNTY's custody and her rights to her serious medical and mental health needs, as set forth above. Notwithstanding this knowledge, on information and belief, Defendants SHERIFF YOUNGBLOOD, MATTHEW HARKEY and DOES 8 through 10 have approved and ratified of the conduct and decisions of Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Irene Rivera. By so doing, Defendants SHERIFF YOUNGBLOOD, MATTHEW HARKEY and DOES 8 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF YOUNGBLOOD, MATTHEW HARKEY and DOES 8 through 10 and other policymaking officers for the COUNTY and KCSO were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and KCSO custody, medical and mental health staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY and KCSO.

133.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants SHERIFF YOUNGBLOOD,

MATTHEW HARKEY and DOES 8 through 10 were a moving force and/or a proximate cause of the deprivations of decedent Irene Rivera's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

134.   Defendants subjected decedent Irene Rivera to their wrongful conduct, depriving decedent Irene Rivera of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Irene Rivera and others would be violated by their acts and/or omissions.

135.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF YOUNGBLOOD, MATTHEW HARKEY and DOES 8 through 10 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

## XIII.

## SIXTH CAUSE OF ACTION

### Negligence – Wrongful Death

### Plaintiff R.R. As Against All Defendants and DOES 1 through 10

136.   Plaintiff reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

137.   At all times, Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10 owed Plaintiff and decedent Irene Rivera the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

138.   At all times, these Defendants owed Plaintiff and decedent Irene Rivera the duty to act with reasonable care.

139.   These general duties of reasonable care and due care owed to Plaintiff and decedent Irene Rivera by these Defendants include but are not limited to the following specific obligations:

a.   To properly identify symptoms of suicide;

b.   To properly take precautions in housing and confining an inmate who has symptoms of suicide;

c.   To house and confine a suicidal inmate in a housing cell free of suicide hazards;

d.   To summon, or transport Decedent to, necessary and appropriate emergency medical and mental health care;

e.   To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

f.   To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person in medical and mental health crisis with serious medical and mental health needs;

g.   To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

h.   To refrain from abusing their authority granted them by law; and

i.   To refrain from violating Plaintiff' and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

140.   Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES, MARK MILLER, JULIUS QUILALA and DOES 1 through 10, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiff and decedent Irene Rivera.

141.   Defendants COUNTY and KCSO are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

142.   As a direct and proximate result of these Defendants' negligence, Plaintiff and decedent Irene Rivera sustained injuries and damages, and against each

1    and every Defendant named in this cause of action in their individual capacities are

2    entitled to relief, including punitive damages against such individual Defendants.

### XIV.

### SEVENTH CAUSE OF ACTION

### Negligence – Medical Malpractice

### Plaintiff Estate of IRENE RIVERA As Against Defendants JULIUS QUILALA and DOES 1 through 10

143.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

144.    Decedent Irene Rivera was under the care and treatment of Defendants JULIUS QUILALA and DOES 1 through 10, all of whom were COUNTY medical staff assigned to the COUNTY Jails, including CRF, who were required to examine, treat, monitor, prescribe for and care for her and to provide her with medical attention when she suffered a medical emergency. These Defendants, acting within the scope and course of their employment with Defendants COUNTY and KCSO, negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer decedent Irene Rivera to specialist medical care providers; negligently failed to provide physician care; negligently failed to provide psychiatry care; carelessly failed to detect, monitor, and follow-up with her condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee Irene Rivera.

145.    Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely provide decedent Irene Rivera emergency medical and mental health care,

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1  failed to provide adequate and competent staffing, and to ensure the care and

2  treatment ordered for decedent Irene Rivera was provided.

3      146.   As a direct and legal result of the aforesaid negligence and carelessness

4  of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and

5  against these Defendants, and each of them, are entitled to compensatory damages

6  and as applicable to this claim for Medical Negligence, to be proven at time of trial.

7      147.   Defendants COUNTY and KCSO are vicariously liable for the violations

8  of state law and conduct of their officers, deputies, employees, and agents, including

9  individual named defendants, under California Government Code § 815.2.

10                               **XV.**

11                    **EIGHTH CAUSE OF ACTION**

12            **Violation of California Government Code § 845.6**

13  **Plaintiff Estate of IRENE RIVERA As Against All Defendants and DOES 1**

14                            **through 10**

15      148.   Plaintiff realleges and incorporates herein by reference each of the

16  preceding paragraphs of this complaint, and any subsequent paragraphs.

17      149.   Defendants LEXI PRESSLEY, SAMUEL FLORES GONZALES,

18  MATTHEW HARKEY, MARK MILLER, JULIUS QUILALA and DOES 1 through

19  10 was in need of immediate medical care and treatment, and each failed to take

20  reasonable action to summon immediate medical care and treatment. Each such

21  individual defendant, employed by and acting within the course and scope of his/her

22  employment with Defendants COUNTY and KCSO, knowing and/or having reason

23  to know of decedent Irene Rivera's need for immediate medical care and treatment,

24  failed to take reasonable action to summon such care and treatment in violation of

25  California Government Code § 845.6.

26      150.   Defendants COUNTY and KCSO are vicariously liable for the violations

27  of state law and conduct of their officers, deputies, employees, and agents, including

28  individual named defendants, under California Government Code § 815.2.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

151.   As a direct and proximate result of the aforementioned acts of these Defendants, decedent Irene Rivera was injured as set forth above, and their losses entitle Plaintiff to all damages allowable under California law. Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law, including punitive damages against these individual Defendants.

## XVI.

## NINTH CAUSE OF ACTION

### Violation of California Civil Code § 52.1 (Tom Bane Act)

### Plaintiff Estate of IRENE RIVERA As Against All Defendants

152.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

153.   Plaintiff brings the claims in this cause of action as a survival claim permissible under California law, including Cal. Code of Civ. Proc. § 377.20 *et. seq*.

154.   By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy, as described above, while decedent Irene Rivera was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Irene Rivera's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

    a.   The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while in custody as an inmate as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

    b.   The right for the familial association to be free from government interference as secured by the Fourteenth Amendment to the United States Constitution;

c.    The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

d.    The right to emergency medical and mental health care as required by California Government Code §845.6.

155.    Defendants' violations of decedent Irene Rivera's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.[4] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Irene Rivera's rights as described above, Defendants violated Irene Rivera's rights by the following conduct constituting threat, intimidation, or coercion:

a.    With deliberate indifference to Decedent's serious medical and mental health needs, suffering, and risk of grave harm including death, depriving Decedent of necessary, life-saving care for her medical needs;

b.    With deliberate indifference to hazards that posed a risk to inmates and detainees, such as Decedent;

c.    Subjecting Decedent to ongoing violations of her rights to prompt care for her serious medical and mental health needs over days, causing immense and needless suffering, intimidation, coercion, and threats to her life and well-being;

d.    Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to Kern County jail detainees and inmates;

---

[4] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.,* 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

**FIRST AMENDED COMPLAINT FOR DAMAGES**

e.    Requiring medical and mental health staff to work outside their scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Decedent, they are not competent to make; and

f.    Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

156.    The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent Irene Rivera's rights, or to any legitimate and lawful jail or law enforcement activity.

157.    Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

158.    Further, each Defendant violated decedent Irene Rivera's rights reckless disregard and with the specific intent and purpose to deprive her of her enjoyment of those rights and of the interests protected by those rights.

159.    Defendant COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

160.    As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of decedent Irene Rivera's rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

# XVII.

## TENTH CAUSE OF ACTION

### Declaratory Relief

### (28 U.S.C § 2201)

### Plaintiffs As Against All Defendants

161.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

162.   There is an actual controversy between Plaintiffs and Defendants concerning their respective rights and duties in that Plaintiffs contend that the acts of Defendants, as described herein, are in violation of federal law, and Defendants contend in all aspects to the contrary.

163.   Plaintiffs are entitled to a legal declaration of their rights and Defendants' obligations under the applicable laws as alleged in this Complaint.

# XVIII.

## ELEVENTH CAUSE OF ACTION

### Violation of the Americans With Disability Act of 1990

### (42 U.S.C 12101, *et seq.*)

### Plaintiff Estate of Irene Rivera As Against Defendants DOES 1 through 10

164.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

165.   Pursuant to 42 U.S.C. § 12132, "Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

166.   Under Title II of the Americans with Disability Act, the COUNTY and KCSO are required to make reasonable modifications to avoid discrimination on the basis of disability. The ADA sets an affirmative requirement to act appropriately with respect to prisoners with mental disabilities.

167. ADA creates an affirmative duty in some circumstances to provide special, preferred treatment, or "reasonable accommodation."

168. Facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced.

169. Discrimination includes a defendant's failure to make reasonable accommodations to the needs of a disabled person based on her physical health. These accommodations include training on how to deal with the physically and mentally ill, specialized training of COUNTY staff, heightened level of medical care, and diligent surveillance.

170. Upon information and belief, Decedent Irene Rivera was a disabled individual suffering from a mental disability, an impairment that substantially limited one or more major life activities. Decedent Irene Rivera was a "qualified individual with a disability" for purposes of the Americans with Disabilities Act and the Rehabilitation Act.

171. The COUNTY and KCSO are subject to the Americans with Disabilities Act and the Rehabilitation Act.

172. A person has a disability if he/she has a physical or mental impairment that substantially limits one or more major life activities, a record of such impairment, or is regarded as having impairment.

173. Defendants COUNTY and KCSO denied Decedent Irene Rivera benefits of the services, programs or activities of the COUNTY and KCSO because of her disability and subjected her to discrimination. More precisely, upon information and belief, Defendants COUNTY and KCSO denied Decedent Irene Rivera benefits by not allowing Irene Rivera to engage in programs, services, and activities which would accommodate her mental disabilities.

174. Defendant COUNTY and KCSO failed to make reasonable accommodations to Decedent Irene Rivera's medical needs based on her mental health

**FIRST AMENDED COMPLAINT FOR DAMAGES**

condition. The failure to provide critical medical services was a denial of the services program or activity based on her disability.

175.   Defendant COUNTY and KCSO denied Irene Rivera medical treatment by failing to provide Irene Rivera with treatment for her mental health condition, thereby failing to accommodate Decedent Irene Rivera's disability, and denying her a service, benefit, or program.

176.   Defendants COUNTY and KCSO were deliberately indifferent to Decedent Irene Rivera's serious medical condition. Defendants COUNTY and KCSO had actual knowledge of the substantial risk of harm to Decedent Irene Rivera from her serious diagnosed condition and they responded with deliberate indifference by failing to communicate or document her condition; failing to place her in medical where he could be watched; and failing to provide her medical care when Decedent Irene Rivera was in medical distress.

177.   The regulations promulgated by the Department of Justice to implement Part A of Title II of the ADA require each government entity to conduct a self-evaluation of its programs and services (or the lack thereof) related to persons with disabilities:

    i.   A public entity shall, within one year of the effective date of this part [that is, by January 26, 1993], evaluate its current services, policies, and practices, and the effects thereof, that do not or may not meet the requirements of this part and, to the extent modification of any such services, policies, and practices is required, the public entity shall proceed to make the necessary modifications.

    ii.   A public entity shall provide an opportunity to interested persons, including individuals with disabilities or organizations representing individuals with disabilities, to participate in the self-evaluation process by submitting comments.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

178.   Defendants COUNTY and KCSO failed to conduct any self-evaluation of procedures and training for its personnel about how to handle encounters with persons who have a physical illness or another disability.

179.   Defendants COUNTY and KCSO violated Decedent Irene Rivera's clearly established rights under the ADA with deliberate indifference.

180.   The violation of Decedent Irene Rivera's rights resulted from a COUNTY and KCSO policy or custom adopted or maintained with deliberate indifference.

181.   As a direct and proximate result of the Defendants COUNTY and KCSO conduct as herein described, Decedent Irene Rivera suffered damages in the amount to be determined at the time of trial.

### XIX.

### TWELFTH CAUSE OF ACTION

### Violation of the Rehabilitation Act

### (29 U.S.C. §704(a))

**Plaintiff Estate of Irene Rivera As Against Defendants DOES 1 through 10**

182.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

183.   The Rehabilitation Act of 1973 ("Section 504") states in pertinent part, provides that "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a).

184.   Defendants COUNTY and KCSO are programs that receive federal financial assistance as defined in 29 U.S.C. § 794(b).

185.   Decedent Irene Rivera was a "qualified individual with a disability" under the Rehabilitation Act.

186.   Defendants COUNTY and KCSO violated the Rehabilitation Act by failing to make reasonable accommodations to the needs of Decedent Irene Rivera, a

1  disabled person. It was a reasonable accommodation to provide her with needed

2  medical care.

3      187.   Employees of COUNTY and KCSO were deliberately indifferent to

4  Decedent Irene Rivera's serious medical condition. They failed to consider obvious

5  symptoms of Decedent Irene Rivera's mental health condition.

6      188.   Instead of providing Decedent Irene Rivera with adequate medical

7  services and fair treatment, Defendants COUNTY and KCSO refused to provide her

8  with medical care as her condition deteriorated.

9      189.   Defendants COUNTY and KCSO failed to accommodate Decedent Irene

10 Rivera with the services and programs available to patients with a medical condition.

11 There were medical services readily available to Decedent Irene Rivera, but

12 Defendants COUNTY and KCSO failed to properly house Decedent Irene Rivera

13 where Decedent Irene Rivera could be monitored and humanely cared for.

14     190.   Defendants COUNTY and KCSO knew of the substantial risk of harm to

15 Decedent Irene Rivera from her serious, diagnosed condition and they responded with

16 deliberate indifference by failing to communicate or document her condition; failing to

17 place her in medical where he could be watched; and failing to provide her medical

18 care when Decedent Irene Rivera was in medical distress.

19     191.   Defendants COUNTY and KCSO violated the Rehabilitation Act by

20 failing to conduct any self-evaluation of procedures and training for its personnel about

21 how to handle communications with jails regarding patients who have a physical

22 medical condition or another disability.

23     192.   Defendants COUNTY and KCSO violated the Rehabilitation Act by

24 failing to conduct any self-evaluation of procedures and training for its personnel about

25 how to handle encounters with persons who have a physical medical condition or

26 another disability.

27

28

**FIRST AMENDED COMPLAINT FOR DAMAGES**

193.   As a direct and proximate result of the Defendants COUNTY and KCSO conduct as herein described, Decedent Irene Rivera suffered damages in the amount to be determined at the time of trial.

## XVIII.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully requests that the Court enter a judgment as follows:

A.    Wrongful death of Irene Rivera, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

B.    Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

C.    Irene Rivera's coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

D.    Violation of Irene Rivera's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

E.    Irene Rivera's loss of life, pursuant to federal civil rights law;

F.    Irene Rivera's conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

G.    General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

H.    Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

I.    Punitive damages as to individual defendants;

J.    Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine);

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1    K.    A multiplier of damages, including treble damages, under the Tom Bane

2            Act;

3    L.    Penalties under the Tom Bane Act;

4    M.   Interest; and

5    N.    All other damages, penalties, costs, interest, and attorneys' fees as

6            allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil

7            Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil

8            Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California

9            and/or federal law.

10

11  Dated: July 8, 2025          **GASTÉLUM LAW, APC**

12

13                    By: _Denisse O. Gastélum_

                      Denisse O. Gastélum, Esq.

14               Attorneys for Plaintiffs,

15               ESTATE OF IRENE RIVERA, by and through

                      successor in interest, R.R.; R.R., a minor, by and

16               through Guardian Ad Litem, Bertha Rivera;

17               BERTHA RIVERA, individually; and JOSE

                      RIVERA, individually

18

19

20  Dated: July 8, 2025          **LAW OFFICES OF CHRISTIAN CONTRERAS**

                      **A PROFESSIONAL LAW CORPORATION**

21

22                    By: _Christian Contreras_

23               Christian Contreras, Esq.

                      Attorneys for Plaintiffs,

24               ESTATE OF IRENE RIVERA, by and through

25               successor in interest, R.R.; R.R., a minor, by and

                      through Guardian Ad Litem, Bertha Rivera;

26               BERTHA RIVERA, individually; and JOSE

27               RIVERA, individually

28

**FIRST AMENDED COMPLAINT FOR DAMAGES**

# DEMAND FOR JURY TRIAL

Plaintiffs ESTATE OF IRENE RIVERA, by and through successor in interest, R.R.; R.R., a minor, by and through Guardian Ad Litem, Bertha Rivera; BERTHA RIVERA, individually; and JOSE RIVERA, individually, hereby make a demand for a jury trial in this action.

Dated: July 8, 2025

**GASTÉLUM LAW, APC**

By: _Denisse O. Gastélum_

Denisse O. Gastélum, Esq.
Attorneys for Plaintiffs,
ESTATE OF IRENE RIVERA, by and through
successor in interest, R.R.; R.R., a minor, by and
through Guardian Ad Litem, Bertha Rivera;
BERTHA RIVERA, individually; and JOSE
RIVERA, individually

Dated: July 8, 2025

**LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: _Christian Contreras_

Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF IRENE RIVERA, by and through
successor in interest, R.R.; R.R., a minor, by and
through Guardian Ad Litem, Bertha Rivera;
BERTHA RIVERA, individually; and JOSE
RIVERA, individually

**FIRST AMENDED COMPLAINT FOR DAMAGES**