UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF IRENE RIVERA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KERN COUNTY SHERIFF'S OFFICE, *et al.*,<br><br>Defendants. | Case No. 1:24-cv-01141-CDB<br><br>ORDER GRANTING DEFENDANTS KERN COUNTY HOSPITAL AUTHORITY AND JULIUS QUILALA'S MOTION TO DISMISS<br><br>(Doc. 36) |

Pending before the Court[1] is the motion of Defendants Kern County Hospital Authority ("KCHA") and Julius Quilala (collectively, the "Hospital Defendants") to dismiss all claims against them asserted in the operative, first amended complaint. (Doc. 27). On September 5, 2025, Plaintiffs Estate of Irene Rivera, through successor in interest R.R.; R.R., through guardian ad litem Bertha Rivera; Bertha Rivera, individually; and Jose Rivera ("Plaintiffs") filed an opposition to the motion to dismiss, and on September 15, 2025, the Hospital Defendants filed a reply. (Docs. 38, 40).

///

///

///

---

[1] Following all parties' expression of consent to the jurisdiction of a magistrate judge for all further proceedings in this action, including trial and entry of judgment, on February 10, 2025, this action was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c)(1). (Doc. 24).

**I.     Background**

On September 24, 2024, Plaintiffs initiated this action with the filing of a complaint.  (Doc. 1).  Plaintiffs filed the first amended complaint on July 8, 2025, against the County of Kern, Kern County Sheriff's Office ("KCSO"), Donny Youngblood, Samuel Flores Gonzales, Matthew Harkey, Mark Miller, Lexi Pressley (collectively, the "County Defendants"), the KCHA, and Julius Quilala.  (Doc. 27).  County Defendants and KCHA filed separate motions to dismiss on August 22, 2025.  (Docs. 36, 37).

In the FAC, Plaintiffs allege that, on September 10, 2023, Irene Rivera ("Decedent") was suffering from a mental health crisis and was arrested by the Bakersfield Police Department.  She was booked into the KCSO's Central Receiving Facility ("CRF") in Bakersfield, California.  (Doc. 27 ¶ 35).  "At approximately 2:24 a.m." that same day, Decedent was "housed alone in the C-Deck Court Holding Cell, C3-1."  She was evaluated by Defendant Quilala and "cleared to remain housed at the CRF."  Defendant Quilala was "responsible for conducting a medical assessment, screening and/or evaluation within two (2) hours of booking for postpartum inmates like [Decedent]."  *Id.* ¶ 36.

Postpartum inmates have the "right to immediate medical attention, including attention for drug or alcohol treatment or withdrawal, and an immediate referral to a health care provider," according to KCSO Policy H-100 and "pursuant to the *Yeager* Class Action."[2]  *Id.* ¶ 37.  Decedent met with Defendant Mark Miller, a classification deputy, upon booking and "expressed concerns that less than three (3) months prior to arrest she had given birth to her infant daughter, R.R., and therefore postpartum."  Postpartum inmates are "defined as three (3) months or less from having given birth, miscarried, or aborted.  KCSO custody staff are required to provide pregnant or postpartum inmates with a pink wrist band to alert those in charge that an inmate has been identified as pregnant or postpartum," according to Policy H-100.  *Id.* ¶ 38.  Decedent was "placed in a holding cell without any designation regarding her medical condition that would alert those in charge of [Decedent's] desperate need for a higher level of care," despite Decedent being "less than three (3)

_____

[2] Plaintiffs reference *Yeager, et al. v. Smith, et al.*, Case No. 1:87-cv-00493-REC. (E.D. Cal. Dec. 18, 1989).  *See id.* ¶ 6.

months postpartum, and despite obvious signs that [Decedent], an inmate-patient at the [County] [j]ails, suffered from mental health issues and substance abuse." *Id.* ¶ 39.

On September 10, 2023, at approximately 2:45 a.m., Decedent is "observed, on surveillance footage, wrapping a plastic trash bag around her neck. [Decedent] then proceeds to climb onto a bench located within her cell and steps off the bench with both feet suspended off the ground." *Id.* ¶ 40. At approximately 2:53 a.m. and "nearly ten minutes later," Defendant Pressley finds Decedent hanging in her cell. Defendants Pressley and Gonzales "subsequently enter the cell and cut [Decedent] down. [Decedent] ultimately did not respond to lifesaving measures and was pronounced dead at 3:26 a.m." *Id.* ¶ 41.

Defendants Pressley and Gonzales had "ample opportunity to observe clear signs of [Decedent's] acute suicidality given that [Decedent] was fashioning a noose around her neck which was captured by the surveillance camera." *Id.* ¶ 42. Both Defendants Pressley and Gonzales were "deliberately indifferent to [Decedent's] health and safety as she was left in her cell to die for approximately ten (10) minutes." *Id.* ¶ 42. Plaintiffs assert that Decedent had "been experiencing a medical emergency for an appreciable amount of time prior to her death" and Decedent's need for "medical intervention went unnoticed by the KCSO custody and medical staff …" *Id.* ¶¶ 43-44. Plaintiffs allege that Defendants Pressley, Gonzales, Miller, and Quilala failed to "conduct the required safety check" of Decedent's holding cell. *Id.* ¶ 86.

Regarding the claims of municipal liability, Plaintiffs assert that in 2023 there were eleven in-custody deaths, including five from natural causes and six suicides, within KCSO jails. *Id.* ¶ 51. Plaintiffs allege Decedent was one of the six suicides in 2023 and the ninth death of the calendar year. *Id.* ¶ 52. Plaintiffs further allege that, from January 2008 to December 2023, 22 inmates have died by suicide in jails within the County of Kern. *Id.* ¶ 53. Plaintiffs' FAC factual background for nine other deaths within County facilities. *See id.* ¶¶ 54-63.

## II.    <u>Governing Authority</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *N. Star*

*Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981)).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief).  A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010).  The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citations omitted).  And "even 'well-pleaded facts' are not sufficient if they are accompanied by only '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'"  *Gibson v. City of Portland*, -- F.4th --, 2026 WL 235118, at *16 (9th Cir. Jan. 29, 2026) (quoting *Iqbal*, 556 U.S. at 678).  The Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'"  *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

"For a [Rule] 12(b)(6) motion, a court generally cannot consider material outside the complaint."  *Hamilton v. Bank of Blue Valley*, 746 F. Supp.2d 1160, 1167 (E.D. Cal. 2010) (citing

*Van Winkle v. Allstate Ins. Co.*, 290 F. Supp.2d 1158, 1162 n.2 (C.D. Cal. 2003)).  "Nonetheless, a court may consider exhibits submitted with the complaint." *Id*.  In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id*. at 1168 (quoting *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006)); accord, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F. 3d 1119 (9th Cir. 2002).  "A court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Hamilton*, 746 F. Supp.2d at 1168 (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

## III.  <u>Discussion</u>

### A.    **Exhaustion Under California Government Claims Act**

#### 1.    *Governing Authority*

Under California law, in order to assert a tort claim against a public entity or public employee, a plaintiff must allege compliance with the claims presentation requirements of the California Government Claims Act ("CGCA").  *See* Cal. Gov't Code §§ 945.4, 950.2; *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988); *Fisher v. Pickens*, 225 Cal. App. 3d 708, 718 (1990).  "Compliance with the claims statute is mandatory, and failure to file a claim is fatal to the cause of action." *Pac. Tel. & Tel. Co. v. Cnty. of Riverside*, 106 Cal. App. 3d 183, 188 (1980).  The plaintiff bears the burden of ensuring that a claim was properly presented to the appropriate public entity.  *Jefferson v. City of Fremont*, No. C-12-0926 EMC, 2013 WL 1747917, at *9 (N.D. Cal. Apr. 23, 2013) (citing *Life v. Cnty. of Los Angeles*, 227 Cal. App. 3d 894, 901 (1991)).

"Before a civil action may be brought against a public entity [or public employee], a claim must first be presented to the public entity and rejected." *Ocean Servs. Corp. v. Ventura Port Dist.*, 15 Cal. App. 4th 1762, 1775 (1993), *as modified on denial of reh'g* (June 23, 1993); Cal. Gov't

Code § 945.4 (generally barring suit "until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board"). Claims for "injury to person or to personal property" must be presented within six months after accrual. *See* Cal. Gov't Code § 911.2(a); *City of Stockton v. Super. Ct.*, 42 Cal.4th 730, 738 (2007). A claimant who misses the six-month limitations deadline may file a written application with the public entity for leave to present the late claim within one year of the date of accrual of the cause of action, stating the reason for the delay. Cal. Gov't Code § 911.4. The claimant has six months after a denial of the application to file a petition in the Superior Court for an order relieving the claimant of section 945.4. *See* Cal. Gov't Code § 946.6.

2.    *Analysis*

Here, California state law plainly establishes KCHA as a separate legal entity from the County of Kern. *See* Cal. Health & Safety Code § 101853 ("Pursuant to this chapter, the board of supervisors may establish by ordinance the Kern County Hospital Authority, which shall be a public agency that is a local unit of government separate and apart from the county and any other public entity for all purposes …"). Plaintiffs do not assert that they presented their claims, pursuant to CGCA, to the KCHA. Instead, they state that they presented their claims to the County of Kern, and in support thereof, attach to their opposition brief copies of those claims and the subsequent rejection notices. *See* (Doc. 38, Exs. A, B). The FAC refers to the claims presented to the County of Kern and the Hospital Defendants do not contest the authenticity of the copies attached to Plaintiffs' opposition. *See* (Doc. 40). Thus, the Court will treat the claims and rejection notices attached as exhibits to Plaintiffs' opposition as part of the complaint and assume their contents to be true for purposes of ruling on Hospital Defendants' motion. *See Hamilton*, 746 F. Supp.2d at 1168.

"The claim presentation requirements of the [CGCA] constitute an element of any cause of action that is subject to [the CGCA]." *Franklin v. City of Kingsburg*, No. 1:18-CV-0824 AWI SKO, 2023 WL 2976285, at *3 (E.D. Cal. Apr. 17, 2023) (citing *California-Am. Water Co. v. Marina Coast Water Dist.*, 86 Cal. App. 5th 1272, 1287 (2022)), *reconsideration denied*, No. 1:18-CV-00824-SKO, 2024 WL 3202424 (E.D. Cal. June 26, 2024); *see DiCampli-Mintz v. Cnty. of*

*Santa Clara*, 55 Cal.4th 983, 990 (2012) ("The filing of a claim is a condition precedent to the maintenance of any cause of action against the public entity and is therefore an *element* that a plaintiff is required to prove in order to prevail.") (citation and quotation omitted; emphasis in original).

The California Supreme Court's decision in *DiCampli–Mintz* is instructive. There, the plaintiff was injured during a surgery performed at a hospital owned by the county. Plaintiff's counsel sent a letter to the hospital's risk management department, and did not include any request for it to be forwarded to any of the statutorily-designated recipients set forth in the CGCA. An employee of the risk management department spoke to plaintiff's counsel, acknowledged receipt of the letter, discussed its content, but did not mention the failure to deliver the letter to the appropriate statutory recipient. The plaintiff argued that she had substantially complied with the CGCA by sending the letter, which was received by the risk management department. *See DiCampli-Mintz*, 55 Cal.4th at 987-989.

The California Supreme Court rejected this substantial compliance argument, explaining that the plain language of the CGCA required presentation to one of the statutorily-designated recipients or actual receipt by a proper recipient. *Id.* at 992. The Court rejected the lower court's holding that the CGCA could be satisfied by a claimant serving a party who has a duty to notify one of the statutorily-designated recipients, holding that "by focusing on the duty of a public employee in receipt of a claim to forward the claim to the proper agency, [the lower court] inappropriately shifts responsibility for filing a claim with the proper official or body from the claimant to the public entity." *Id.* at 996.

The California Supreme Court held that, even if the public entity in question "has actual knowledge of facts that might support a claim, the claims statutes still must be satisfied." *Id.* at 990 (citation omitted). "Thus, after *DiCampli–Mintz*, either there must be strict compliance with § 915(a) or the only way to 'substantially comply' with § 915(a) is if there is actual receipt of the misdirected claim by one of the statutorily designated recipients (*i.e.*, § 915(e))." *Jefferson*, 2013 WL 1747917, at *9.

It is clear, and Plaintiffs concede, that they presented a claim to the County of Kern but did

7

not present any claim to the KCHA pursuant to the CGCA.  *See* (Doc. 38).  Plaintiffs advance three arguments in opposing Hospital Defendants' motion regarding failure to comply with the CGCA: 1) even if the KCHA is a separate legal entity from the County of Kern, the "close administrative and operational relationship" between them "means that the County's receipt of the claim necessarily conveyed notice to KCHA" (*id.* at 11); 2) equitable estoppel relieves Plaintiffs from the requirements of the CGCA because the County of Kern never issued a notice of non-compliance nor notified Plaintiffs of the claim being "procedurally defective for failure to name the correct public entity or employee" (*id.* at 11-13); and 3) Plaintiffs did not discover, nor reasonably could have discovered, "that KCHA was a separate entity and that a tort claim had to be filed separately against KCHA until KCHA and the County raised this issue" (*id.* at 13-14).

First, Plaintiff cites no authority for the proposition that any purported "close administrative and operational relationship" between the County of Kern and the KCHA resulted in notice to the KCHA via notice upon the County of Kern.  Indeed, state law establishes the KCHA as a separate legal entity.  *See* Cal. Health & Safety Code § 101853.  As explained by the California Supreme Court in *DiCampli-Mintz*, there can be no "substantial compliance" upon the KCHA via satisfactory service of a claim upon the County of Kern; the statutory requirements of the CGCA must still be satisfied and that requires satisfactory delivery of a claim to the statutorily-designated recipients at the KCHA.  *DiCampli-Mintz*, 55 Cal.4th at 990.  Further, as state law expressly establishes the KCHA as a separate legal entity from the County of Kern, Plaintiffs' argument that they could not reasonably discover that fact is unavailing given its existence is set forth set forth in the California Health and Safety Code, section 101853.

Second, the holding in *DiCampli-Mintz* materially limits the availability of equitable estoppel under the circumstances here and Plaintiffs' citations to California state authority in support of their equitable estoppel argument are not persuasive.  If "a claim as presented fails to comply substantially with the Act's requirements, Cal. Gov. Code § 910.8, it triggers various requirements."  *Soublet v. Cnty. of Alameda*, No. 18-CV-03738-JST, 2018 WL 6268872, at *3 (N.D. Cal. Nov. 29, 2018) (quotations omitted) (citing *Phillips v. Desert Hosp. Dist.*, 49 Cal.3d 699, 707 (1989)).  "Where a document qualifies as 'a claim as presented,' the public entity must

give the claimant notice of the defect, *see* Cal. Gov. Code § 910.8, or else waive that defense, *see id.* § 911." *Id.* The aforementioned California state statutes, therefore, do not establish that the County of Kern was required to notify Plaintiffs of a defect or noncompliance regarding their failure to *properly deliver a claim to the KCHA*, only that the County must have given notice of a defect if Plaintiffs' *claim, as properly presented to the County, failed to substantially comply* with applicable requirements. *See Jefferson*, 2013 WL 1747917, at \*9 ("The problem here is that *DiCampli–Mintz* puts limitations on any estoppel argument … in *DiCampli–Mintz*, an employee from the County's risk management department responded to the letter from the plaintiff's attorney, engaged in a substantive discussion with the attorney, but never said anything about the claim being presented to the wrong party. In spite of these facts, the California Supreme Court still held in the County's favor.").

Additionally, the Board of Supervisors of the County of Kern and the Board of Governors of the KCHA are separate entities with different members[3] and, thus, any argument of substantial compliance based on any such facts is unavailing. *See DiCampli-Mintz*, 55 Cal. 4th at 997 ("These cases hold that when the governing body of one public entity is also the governing body of another public entity, a claim against the subordinate entity that is delivered to the governing body constitutes substantial compliance with the claims statute. That is not the case here.").

Plaintiffs do not cite to any authority for the proposition that the substantial compliance doctrine applies differently in the instant action than as set forth by the California Supreme Court in *DiCampli-Mintz*. Plaintiffs concede that they did not deliver their claim to KCHA as required by California state law. *See* (Doc. 38 at 11-13). As such, Plaintiffs fail to plead a necessary element of their claims brought pursuant to state law. Thus, the Court will grant Hospital Defendants' motion as to the sixth, seventh, eighth, and ninth causes of action in the FAC. *See Frazier v. City of Fresno*, No. 1:20-CV-01069-ADA-SAB, 2023 WL 4108322, at \*37 (E.D. Cal. June 21, 2023) (collecting cases and noting CGCA applies to Cal. Civ. Code § 52.1, insofar as the claim seeks

---

[3] *Compare* Kern County Board of Supervisors, https://www.kerncounty.com/government/board-of-supervisors (last visited December 4, 2025), *with* Kern County Hospital Authority Board of Governors, https://www.kernmedical.com/about-us/hospital-authority/board-of-governors/ (last visited December 4, 2025).

damages); *see also Hicks v. Hamkar*, No. 2:13-CV-01687-KJM-DB, 2016 WL 5847011, at \*8 (E.D. Cal. Oct. 6, 2016) ("To file a claim under section 845.6, a plaintiff must first exhaust the administrative remedies established in the Government Claims Act."), *report and recommendation adopted*, No. 13-CV-01687-KJM-DB, 2017 WL 3105643 (E.D. Cal. July 21, 2017), *clarified on denial of reconsideration*, No. 2:13-CV-01687-KJM-DB PS, 2017 WL 3537254 (E.D. Cal. Aug. 17, 2017).

As the sixth, seventh, eighth, and ninth causes of action against the Hospital Defendants will be dismissed, the Court will not reach Hospital Defendants' alternative arguments for dismissal of said claims on the grounds that they are inadequately pleaded. *See Martinez v. Cnty. of Riverside*, No. EDCV 22-2144 JGB (SHKx), 2023 WL 4680791, at \*3 (C.D. Cal. June 8, 2023) ("Because failure to allege compliance with the California Government Claims Act is fatal, the Court DISMISSES Plaintiffs' state law claims for failure to comply with California procedures … Furthermore, because the Court dismisses Plaintiffs' state law claims, the Court need not reach the County's other contentions against those claims.") (citation and quotation omitted).[4]

**B.      Federal Claims Against Defendant Quilala**

1.      *Governing Authority*

To state a claim under section 1983, a plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (citing *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *West v. Atkins*, 487 U.S. 42, 48 (1988)).   This requires the plaintiff to demonstrate that each defendant personally participated in the deprivation of his rights. *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007).

---

[4] While the Court acknowledges and does not take lightly the significant implications here for Plaintiffs' failure to properly comply with the claims presentation requirements under the CGCA, for the reasons set forth above, Plaintiffs' arguments that dismissing their state law claims "would subvert the very policy underlying the [CGCA]" (Doc. 38 at 11) are without merit and contrary to *DiCampli-Mintz*. *See Hawkins v. City of Barstow*, No. EDCV 20-557-MWF-SP, 2020 WL 6036322, at \*3 (C.D. Cal. Sept. 15, 2020) ("This result [dismissal of claims] is undoubtedly harsh, but the Court's hands are tied by the California Supreme Court's unforgiving construction of the Act's presentment requirement.").

The Fourteenth Amendment protects the rights of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (noting that pretrial detainees' "rights arise under the Fourteenth Amendment's Due Process Clause"). Relevant here, the elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual defendant are:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[] on the facts and circumstances of each particular case.

*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (alteration in original; footnote, citation, and internal quotation marks omitted); *see Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

The Supreme Court has explained that there is "no significant distinction between claims alleging inadequate medical care and those alleging inadequate 'conditions of confinement.' Indeed, the medical care a prisoner receives is just as much a 'condition' of his confinement as ... the protection he is afforded against other inmates." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *see also Gordon*, 888 F.3d at 1124 ("we have long analyzed claims that government officials failed to address pretrial detainees' medical needs using the same standard as cases alleging that officials failed to protect pretrial detainees in some other way").

Thus, to bring a pretrial detainee's failure to protect or inadequate medical care claim under the Fourteenth Amendment, a plaintiff must establish the same four factors as noted above. *Gordon*, 888 F.3d at 1125; *Castro*, 833 F.3d at 1071. In contrast to the knowing and purposeful state of mind in the first element, the remaining elements require an objective standard. *See Castro*, 833 F.3d at 1070-71. As noted *supra*, the third element must be viewed on each case's particular facts and circumstances, and the plaintiff must prove the defendant acted with "more than

negligence but less than subjective intent – something akin to reckless disregard." *Sandoval*, 985 F.3d at 669 (quoting *Castro*, 833 F.3d at 1071).

The Fourteenth Amendment also protects liberty interests in the companionship between parents and children. "Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. Cal. Dep't. of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). "Only official conduct that shocks the conscience is cognizable as a due process violation … A prison official's deliberately indifferent conduct will generally 'shock the conscience' so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Id.* (citations and quotations omitted).

### 2.    *Analysis*

Pursuant to section 1983, Plaintiffs assert as their first, second, and third causes of action violations of the Fourteenth Amendment for failure to protect from harm, failure to provide medical care, and deprivation of the right to a familial relationship with decedent, respectively. (Doc. 27 at 23-31). Here, because Decedent was a pretrial detainee, her rights derive from the due process clause of the Fourteenth Amendment. *See Bell*, 441 U.S. at 545. "The duty to protect detainees from suicide is grounded in the substantive liberty interest to adequate medical care." *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 988 (E.D. Cal. 2017).

Hospital Defendants argue that Plaintiffs failed to plead sufficient facts regarding what actions or inactions by Hospital Defendants support the assertions of deliberate indifference to Decedent's medical needs. (Doc. 36-1 at 6). Hospital Defendants assert that KCHA nursing staff perform initial intake assessments, distribute medications prescribed by physicians, perform daily suicide assessments, treat minor medical conditions, refer inmates to the hospital or County Behavioral Health, and recommend inmates to be placed on suicide watch. *Id.* at 7-8. Hospital Defendants further assert that Defendant Quilala performed the initial assessment of Decedent when she was brought to CRF, that Decedent had "only been in the CRF for less than one hour," and "KCHA's only involvement was the performance of the initial assessment." *Id.* at 8. Hospital Defendants argue that "Plaintiffs are mistaken in their assumption that the nursing staff at KCHA

12

are mental health care providers" and that "Plaintiffs do not allege any facts to support deliberate indifference by Nurse Quilala." *Id.* at 7-8.

Contrary to Hospital Defendants' contentions, individuals need not be physicians nor tasked with providing mental healthcare to be subject to the Fourteenth Amendment in regards to deliberate indifference towards pretrial detainees. *See Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010) (explaining that the "'deliberate indifference' standard applies to claims that correction facility officials failed to address the medical needs of pretrial detainees"), *overruled on other grounds by Castro*, 833 F.3d at 1060; *see also Est. of Prasad ex rel. Prasad v. Cnty. of Sutter*, 958 F.Supp.2d 1101, 1112 (E.D. Cal. 2013) (noting deliberate indifference violates Fourteenth Amendment rights of pretrial detainees "whether the indifference is manifested by doctors, guards, or other personnel").

In the operative FAC, Plaintiffs allege that Decedent was evaluated by Defendant Quilala and "cleared to remain housed at the CRF" and that Defendant Quilala was "responsible for conducting a medical assessment, screening and/or evaluation within two (2) hours of booking for postpartum inmates like [Decedent]." (Doc. 27 ¶ 36). Plaintiffs further allege that Defendant Quilala failed to "conduct the required safety check" of Decedent's holding cell. *Id.* ¶ 86. Plaintiffs plead no other facts in support of their claims against Defendant Quilala.

Plaintiffs allege that Decedent met with Defendant Mark Miller, a classification deputy, upon booking and "expressed concerns that less than three (3) months prior to arrest she had given birth to her infant daughter, R.R., and therefore postpartum." Plaintiffs further that KCSO custody staff are required to provide pregnant or postpartum inmates with a pink wrist band to alert those in charge that an inmate has been identified as pregnant or postpartum, according to Policy H-100. *Id.* ¶ 38. Plaintiffs  provide that Decedent was "placed in a holding cell without any designation regarding her medical condition that would alert those in charge of [Decedent's] desperate need for a higher level of care," despite Decedent being "less than three (3) months postpartum, and despite obvious signs that [Decedent], an inmate-patient at the [County] [j]ails, suffered from mental health issues and substance abuse." *Id.* ¶ 39.

Here, Plaintiffs do not adequately allege that Defendant Quilala was aware of any heightened risk of self-harm, nor even that Defendant Quilala was aware that Decedent was postpartum (Plaintiffs assert only that Defendant Miller was aware of this), but merely that Defendant Quilala evaluated Decedent.  At this pleading stage, and making all reasonable inferences in favor of Plaintiffs, the Court concludes Plaintiffs have failed to adequately allege that Defendant Quilala was aware, or reasonably should have been aware, that Decedent was at an acute risk of harm.  Plaintiffs plead no facts that reasonably would permit the drawing of an inference that Defendant Quilala was informed of any heightened risk for Decedent, nor that circumstances should have made Defendant Quilala aware of any such risk.  Indeed, Plaintiffs' factual assertions in the FAC against Defendant Quilala consist of no more than two sentences.  *See* (Doc. 27 at 12).  Plaintiffs have, thus, failed to plead cognizable claims of failure to protect from harm and failure to provide medical care under the Fourteenth Amendment, pursuant to section 1983, against Defendant Quilala.

Regarding Plaintiffs' claim of deprivation of right to a familial relationship, as noted *supra*, "[a] prison official's deliberately indifferent conduct will generally 'shock the conscience' so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Lemire,* 726 F.3d at 1075.  Plaintiffs include no other assertions of fact, aside from those recounted above, in support of said claim against Defendant Quilala.  As the Court has found Plaintiffs have failed to state cognizable claims regarding Defendant Quilala's failure to protect and to provide medical care, Plaintiffs assertions are insufficient to state a claim of deprivation of right to a familial relationship. *Cf. Palacios v. Cnty. of San Diego*, No. 20-CV-450-MMA (DEB), 2020 WL 4201686, at *11 (S.D. Cal. July 22, 2020) ("… the Court has already found that Plaintiff pleads sufficient facts to show a deliberate indifference to Ortiz's serious medical needs under the Fourteenth Amendment … These facts leading up to Ortiz's suicide plausibly demonstrate that [personnel] could have had time to actually deliberate.  Therefore, the Court finds that Plaintiff pleads sufficient facts to sustain her substantive due process claim under the Fourteenth Amendment for the purpose of surviving a motion to dismiss.").

///

14

**C.      Federal Claims Against KCHA**

      1.      *Governing Authority*

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Local governments are responsible only for their own illegal acts; they are not vicariously liable for their employees' actions. *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

A municipality is held liable only when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Monell*, 436 U.S. at 691. This "official municipal policy" need not be expressly adopted, "[i]t is sufficient that the constitutional violation occurred pursuant to a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citation and quotations omitted). A policy can also be one of action or inaction, such as a failure to train employees when such omissions amount to the government's policy. *See Long*, 442 F.3d at 1189 ("[A] county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference[.]").

Thus, to establish a § 1983 claim for municipal liability, Plaintiff must show: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Burke v. County of Alameda*, 586 F.3d 725, 734 (9th Cir. 2009).

Courts in the Ninth Circuit use a two-part test to evaluate whether factual allegations regarding municipal liability are sufficiently pled: "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing

15

party to be subjected to the expense of discovery and continued litigation." *A.E. ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

"Under Ninth Circuit precedent, [a] policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations. In an 'omission' action, a plaintiff must show the municipality's policy of inaction amounts to deliberate indifference to the plaintiff's constitutional right, and that the policy caused the violation, in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Fosbinder v. Cnty. of San Diego*, No. 24-CV-733-RSH-SBC, 2024 WL 4631275, at *10 (S.D. Cal. Oct. 30, 2024) (alterations in original; quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012)).

      2.  *Analysis*

Hospital Defendants seek dismissal of the fourth cause of action and assert that Plaintiffs have not alleged sufficient facts to state a *Monell* claim against KCHA itself as employer of Defendant Quilala. (Doc. 36-1 at 8-10).

The Court finds that, as Plaintiffs have failed to plead any underlying constitutional violations by Defendant Quilala, Plaintiffs' *Monell* claims against KCHA fail. *See Harris v. Cnty. of San Diego*, No. 3:24-CV-2117-JES-KSC, 2025 WL 2441046, at *6 (S.D. Cal. Aug. 25, 2025) ("Although Plaintiff alleged constitutional violations against Sheriff Martinez and doe defendants, such claims are not adequately pled, as stated above. As discussed above, Plaintiff fails to allege a violation of his constitutional rights by any individual. Therefore, Plaintiff's *Monell* cause of action against the County is DISMISSED."); *Cavanaugh v. Cnty. of San Diego*, No. 20-56311, 2021 WL 6103115, at *1 (9th Cir. Dec. 22, 2021) (holding that "[b]ecause the complaint did not adequately plead a constitutional violation by the individual defendants, the district court correctly dismissed the *Monell* claim against San Diego County").

**D.  Remaining Federal Claims**

As Hospital Defendants' motion does not seek dismissal of the tenth claim for declaratory relief, asserted by Plaintiffs against all Defendants, the Court will not conduct any analysis thereto. *See* (Doc. 36).

**E.     Leave to Amend**

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires" as the purpose of the Rule is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  However, courts may, in their discretion, choose to decline leave to amend due to futility, bad faith, undue delay, prejudice to the opposing parties, dilatory motive or conduct, or a repeated failure to cure deficiencies by amendments. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–893 (9th Cir. 2010).  A court's discretion in denying leave to amend is particularly broad after plaintiff has already been afforded an opportunity to amend the complaint. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016).

Here, Plaintiffs request leave to amend any claim dismissed.  (Doc. 38 at 16).  Plaintiffs will be granted leave to amend the first, second, third, and fourth causes of action.  Although it is unlikely Plaintiffs could remedy the CGCA deficiencies noted above, given that leave to amend is to be liberally granted, the Court will permit Plaintiffs to amend the six, seventh, eighth, and ninth causes of action only to the extent they are able in good faith to cure the defects noted above.

**IV.     Conclusion and Order**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.   Hospital Defendants' motion to dismiss (Doc. 36) is GRANTED.

2.   The first, second, third, fourth, sixth, seventh, eighth, and ninth causes of action are DISMISSED without prejudice against the Hospital Defendants;

3.   Plaintiffs are GRANTED leave to amend;

4.   Within 14 days of entry of this order, Plaintiffs SHALL file any second amended complaint; and

///

///

///

///

///

17

5. Hospital Defendants SHALL file their response to any second amended complaint within 14 days of Plaintiffs' filing.  See Fed. R. Civ. P. 15(a)(3).

IT IS SO ORDERED.

Dated:    **January 30, 2026**

_____
UNITED STATES MAGISTRATE JUDGE

18