UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF IRENE RIVERA, *et al.*, | Case No. 1:24-cv-01141-CDB |
| Plaintiffs, | ORDER GRANTING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS |
| v. | (Doc. 37) |
| KERN COUNTY SHERIFF'S OFFICE, *et al.*, | **14-DAY DEADLINE** |
| Defendants. | |

Pending before the Court[1] is the motion of Defendants County of Kern, Kern County Sheriff's Office, Donny Youngblood, Samuel Flores Gonzales, Matthew Harkey, Mark Miller, and Lexi Pressley (collectively, the "County Defendants") to dismiss claims asserted in the operative first amended complaint. (Doc. 27). On September 5, 2025, Plaintiffs Estate of Irene Rivera, through successor in interest R.R.; R.R., through guardian ad litem Bertha Rivera; Bertha Rivera, individually; and Jose Rivera ("Plaintiffs") filed an opposition to the motion to dismiss, and on September 15, 2025, the County Defendants filed a reply. (Docs. 39, 41).

///

///

---

[1] Following all parties' expression of consent to the jurisdiction of a magistrate judge for all further proceedings in this action, including trial and entry of judgment, on February 10, 2025, this action was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c)(1). (Doc. 24).

## I.  **Background**

On September 24, 2024, Plaintiffs initiated this action with the filing of a complaint.  (Doc. 1).  Plaintiffs filed the first amended complaint on July 8, 2025, against the County Defendants, as well as the Kern County Hospital Authority ("KCHA") and Julius Quilala (collectively, the "Hospital Defendants").  (Doc. 27).  County Defendants and the Hospital Defendants filed separate motions to dismiss on August 22, 2025.  (Docs. 36, 37).

In the FAC, Plaintiffs allege that, on September 10, 2023, Irene Rivera ("Decedent") was suffering from a mental health crisis and was arrested by the Bakersfield Police Department.  She was booked into the KCSO's Central Receiving Facility ("CRF") in Bakersfield, California.  (Doc. 27 ¶ 35).  "At approximately 2:24 a.m." that same day, Decedent was "housed alone in the C-Deck Court Holding Cell, C3-1."  She was evaluated by Defendant Quilala and "cleared to remain housed at the CRF."  Defendant Quilala was "responsible for conducting a medical assessment, screening and/or evaluation within two (2) hours of booking for postpartum inmates like [Decedent]."  *Id.* ¶ 36.

Postpartum inmates have the "right to immediate medical attention, including attention for drug or alcohol treatment or withdrawal, and an immediate referral to a health care provider," according to KCSO Policy H-100 and "pursuant to the *Yeager* Class Action."[2]  *Id.* ¶ 37.  Decedent met with Defendant Mark Miller, a classification deputy, upon booking and "expressed concerns that less than three (3) months prior to arrest she had given birth to her infant daughter, R.R., and therefore postpartum."  Postpartum inmates are "defined as three (3) months or less from having given birth, miscarried, or aborted.  KCSO custody staff are required to provide pregnant or postpartum inmates with a pink wrist band to alert those in charge that an inmate has been identified as pregnant or postpartum," according to Policy H-100.  *Id.* ¶ 38.  Decedent was "placed in a holding cell without any designation regarding her medical condition that would alert those in charge of [Decedent's] desperate need for a higher level of care," despite Decedent being "less than three (3)

---

[2] Plaintiffs reference *Yeager, et al. v. Smith, et al.*, Case No. 1:87-cv-00493-REC (E.D. Cal. Dec. 18, 1989).  *See id.* ¶ 6.

months postpartum, and despite obvious signs that [Decedent], an inmate-patient at the [County] [j]ails, suffered from mental health issues and substance abuse." *Id.* ¶ 39.

On September 10, 2023, at approximately 2:45 a.m., Decedent is "observed, on surveillance footage, wrapping a plastic trash bag around her neck. [Decedent] then proceeds to climb onto a bench located within her cell and steps off the bench with both feet suspended off the ground." *Id.* ¶ 40. At approximately 2:53 a.m. and "nearly ten minutes later," Defendant Pressley finds Decedent hanging in her cell. Defendants Pressley and Gonzales "subsequently enter the cell and cut [Decedent] down. [Decedent] ultimately did not respond to lifesaving measures and was pronounced dead at 3:26 a.m." *Id.* ¶ 41.

Defendants Pressley and Gonzales had "ample opportunity to observe clear signs of [Decedent's] acute suicidality given that [Decedent] was fashioning a noose around her neck which was captured by the surveillance camera." *Id.* ¶ 42. Both Defendants Pressley and Gonzales were "deliberately indifferent to [Decedent's] health and safety as she was left in her cell to die for approximately ten (10) minutes." *Id.* ¶ 42. Plaintiffs assert that Decedent had "been experiencing a medical emergency for an appreciable amount of time prior to her death" and Decedent's need for "medical intervention went unnoticed by the KCSO custody and medical staff …" *Id.* ¶¶ 43-44. Plaintiffs alleges that Defendants Quilala, Gonzales, Miller, and Pressley failed to "conduct the required safety check" of Decedent's holding cell on the date of her death. *Id.* ¶ 86.

Regarding the claims of municipal liability, Plaintiffs assert that in 2023 there were eleven in-custody deaths, including five from natural causes and six suicides, within KCSO jails. *Id.* ¶ 51. Plaintiffs allege Decedent was one of the six suicides in 2023 and the ninth death of the calendar year. *Id.* ¶ 52. Plaintiffs further allege that, from January 2008 to December 2023, 22 inmates have died by suicide in jails within the County of Kern. *Id.* ¶ 53. Plaintiffs' FAC provides factual background for nine other deaths within County facilities. *See id.* ¶¶ 54-63.

## II.    <u>Governing Authority</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *N. Star*

*Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981)).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief).  A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010).  The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted).  And "even 'well-pleaded facts' are not sufficient if they are accompanied by only '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Gibson v. City of Portland*, -- F.4th --, 2026 WL 235118, at *16 (9th Cir. Jan. 29, 2026) (quoting *Iqbal*, 556 U.S. at 678).  The Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

///

///

**III.    Discussion**

In the operative complaint, Plaintiffs assert the following claims under 42 U.S.C. § 1983 against the County Defendants:[3] (1) failure to protect from harm (against Defendants Harkey, Gonzales, Miller, and Pressley); (2) failure to provide medical care (against Defendants Gonzales, Miller, and Pressley); (3) deprivation of the Plaintiffs' right to familial relationship (against Defendants Gonzales, Miller, and Pressley); (4) *Monell* violations (against County of Kern and KCSO); and (5) supervisory liability (against Defendants Youngblood and Harkey).  *See* (Doc. 27 at 23-44).

Under state law, Plaintiffs bring the following claims against the County Defendants: (6) negligence – wrongful death (against all County Defendants); (8) Cal. Gov. Code § 845.6 (against all County Defendants); (9) Cal. Civ. Code § 52.1 (against all County Defendants); (10) declaratory relief (against all County Defendants); (11) violation of the Americans with Disabilities Act ("ADA") (against County Doe Defendants); and (12) violation of the Rehabilitation Act (against County Doe Defendants).  *See id.* at 46-56.  Only one cause of action in Plaintiffs' operative complaint, (7) negligence – medical malpractice, is not brought against any County Defendants. The Court will address each of the claims against the County Defendants in turn.

**A.  Federal Claims Against Individual Defendants**

***i.  Legal Standard***

To state a claim under section 1983, a plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law.  *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (citing *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *West v. Atkins*, 487 U.S. 42, 48 (1988)).  This requires the plaintiff to demonstrate that each defendant personally participated in the deprivation of his rights.  *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007).

---

[3] When referring to causes of action in the operative complaint by number, the Court shall use the numbering set forth herein.

The Fourteenth Amendment protects the rights of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (noting that pretrial detainees' "rights arise under the Fourteenth Amendment's Due Process Clause"). Relevant here, the elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual defendant are:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[] on the facts and circumstances of each particular case.

*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (alteration in original; footnote, citation, and internal quotation marks omitted); *see Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

The Supreme Court has explained that there is "no significant distinction between claims alleging inadequate medical care and those alleging inadequate 'conditions of confinement.' Indeed, the medical care a prisoner receives is just as much a 'condition' of his confinement as ... the protection he is afforded against other inmates." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *see also Gordon*, 888 F.3d at 1124 ("we have long analyzed claims that government officials failed to address pretrial detainees' medical needs using the same standard as cases alleging that officials failed to protect pretrial detainees in some other way").

Thus, to bring a pretrial detainee's failure to protect or inadequate medical care claim under the Fourteenth Amendment, a plaintiff must establish the same four factors as noted above. *Gordon*, 888 F.3d at 1125; *Castro*, 833 F.3d at 1071. In contrast to the knowing and purposeful state of mind in the first element, the remaining elements are subject to an objective standard. *See Castro*, 833 F.3d at 1070-71. As noted *supra*, the third element must be viewed on each case's particular facts and circumstances, and the plaintiff must prove the defendant acted with "more than

negligence but less than subjective intent – something akin to reckless disregard." *Sandoval*, 985 F.3d at 669 (quoting *Castro*, 833 F.3d at 1071).

The Fourteenth Amendment also protects liberty interests in the companionship between parents and children. "Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. Cal. Dep't. of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). "Only official conduct that shocks the conscience is cognizable as a due process violation … A prison official's deliberately indifferent conduct will generally 'shock the conscience' so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Id.* (citations and quotations omitted).

### ii.  Analysis – First and Second Causes of Action

The same legal standard governs Plaintiffs' first and second causes of action (failure to protect and failure to provide medical care, respectively).  As a preliminary matter, Plaintiffs assert the first cause of action, but not the second, against Defendant Harkey.  However, the allegations against Defendant Harkey (and Defendant Youngblood) included under the first cause of action relate to municipal and supervisorial liability claims.  Plaintiffs do not include allegations against Defendant Harkey and Youngblood in the first (or second) cause of action that arise out of their individual actions against Decedent and, thus, the Court will proceed to analyze such claims under municipal and supervisorial liability *infra*.  *See* (Doc. 27 at 24-28).

In the operative complaint, Plaintiffs assert that Defendants Gonzales, Miller, and Pressley "failed to conduct the required safety check of [Decedent's] holding cell on the date of her death." had sufficient time to take protective measures, and "fail[ed] to provide [Decedent] with appropriate emergency medical and mental health care."  (Doc. 27 ¶¶ 78, 86, 95).

Defendant Miller

Plaintiffs allege that, at the time of the events at issue, Defendant Miller was a classifications officer for KCSO and was tasked with carrying out KCSO policies and procedures and for ensuring inmate safety by way of proper housing and classification. *Id.* ¶ 23.  Plaintiffs assert that Decedent met with Defendant Miller upon booking and "expressed concerns that less than three (3) months

7

prior to arrest she had given birth to her infant daughter, R.R., and therefore postpartum." Plaintiffs note that postpartum inmates are "defined as three (3) months or less from having given birth, miscarried, or aborted. KCSO custody staff are required to provide pregnant or postpartum inmates with a pink wrist band to alert those in charge that an inmate has been identified as pregnant or postpartum," according to Policy H-100. *Id.* ¶ 38. Decedent was "placed in a holding cell without any designation regarding her medical condition that would alert those in charge of [Decedent's] desperate need for a higher level of care," despite Decedent being "less than three (3) months postpartum, and despite obvious signs that [Decedent], an inmate-patient at the [County] [j]ails, suffered from mental health issues and substance abuse." *Id.* ¶ 39. Plaintiffs allege that Defendant Miller failed to "conduct the required safety check" of Decedent's holding cell on the date of her death. *Id.* ¶ 86. These are the only factual allegations set forth by Plaintiffs in support of the claims against Defendant Miller.

Plaintiffs do not plead sufficient facts to permit the drawing of any reasonable inference that Defendant Miller was aware of Decedent's heightened risk of suicide or suicidal ideations. Plaintiffs do not allege that, for example, Decedent disclosed to Defendant Miller that her postpartum state could result in a heightened risk of suicide or self-harm. And Plaintiffs do not allege Defendant Miller conducted an improper or deficient interview with Decedent. Instead, Plaintiffs allege in a conclusory fashion that Decedent showed "obvious signs" she suffered from mental health and substance abuse issues without identifying facts as to what the signs were and why they would have been reasonably apparent to Defendant Miller.

In opposition to County Defendants' motion, Plaintiffs argue that Defendant Miller did not provide Decedent a pink wristband to identify her postpartum status. Even assuming such an argument adequately is supported by the general allegation in the FAC that "Ms. Rivera was placed in a holding cell without any designation regarding her medical condition" (*id.* ¶ 39), Plaintiffs set forth no facts asserting that any such failure caused Decedent's harm. Similarly, Plaintiffs allege that Defendant Miller failed to conduct a "required safety check" (*id.* ¶ 86) but offer not facts to support such an inference. In any event, such an allegation may support a claim of negligence but, by itself, is insufficient to support a claim of deliberate indifference. *See Cravotta v. Cnty. of*

8

*Sacramento*, 717 F .Supp.3 d 941, 954 (E.D. Cal. 2024) (plaintiff failed to allege how defendants acted intentionally where plaintiff failed to establish "what the standard schedule was at the jail for cell monitoring, or when his cell had been checked").

Thus, Plaintiffs fail to adequately plead that Defendant Miller did not take reasonable available measures to abate substantial risk, even though a reasonable officer in his circumstances would have appreciated the high degree of risk involved and making the consequences of Defendant Miller's conduct obvious.  *See*, *e.g.*, *Hernandez v. Cnty. of Santa Clara*, No. 19-CV-07888-EJD, 2020 WL 3101041, at *4 (N.D. Cal. June 11, 2020) ("As to the initial intake decision, Plaintiff alleges that Aguilar had suicidal ideations.  Assuming, as the Court must, that Aguilar did in fact have suicidal ideations, there is no indication that County intake officers were aware of those suicidal ideations.  Plaintiff does not allege, for example, that Aguilar disclosed his ideations to the intake officers, who then ignored them.  Nor does Plaintiff allege that the unnamed officers failed to discover Aguilar's suicidal ideations because they did not conduct a proper intake interview.").

Defendants Gonzales and Pressley

Plaintiffs allege that, at the time of the events at issue, Defendant Gonzales was a corrections deputy for the KCSO, assigned to work as a floor deputy at the time Decedent was found unresponsive in her cell, and was responsible for carrying out KCSO policies and procedures and ensuring inmate safety.  (Doc. 27 ¶ 22).  At the time of the events at issue, Defendant Pressley was also a corrections deputy for the KCSO, assigned to work as a floor deputy at the time Decedent was found unresponsive in her cell, and was responsible for carrying out KCSO policies and procedures and ensuring inmate safety.  *Id.* ¶ 21.

Plaintiffs allege that Decedent was "placed in a holding cell without any designation regarding her medical condition that would alert those in charge of [Decedent's] desperate need for a higher level of care," despite Decedent being "less than three (3) months postpartum, and despite obvious signs that [Decedent], an inmate-patient at the [County] [j]ails, suffered from mental health issues and substance abuse." *Id.* ¶ 39.

On September 10, 2023, at approximately 2:45 a.m., Decedent is "observed, on surveillance footage, wrapping a plastic trash bag around her neck.  [Decedent] then proceeds to climb onto a

bench located within her cell and steps off the bench with both feet suspended off the ground." *Id.* ¶ 40. At approximately 2:53 a.m. and "nearly ten minutes later," Defendant Pressley finds Decedent hanging in her cell. Defendants Pressley and Gonzales "subsequently enter the cell and cut [Decedent] down. [Decedent] ultimately did not respond to lifesaving measures and was pronounced dead at 3:26 a.m." *Id.* ¶ 41.

Plaintiffs allege that Defendants Gonzales and Pressley had "ample opportunity to observe clear signs of [Decedent's] acute suicidality given that [Decedent] was fashioning a noose around her neck which was captured by the surveillance camera." *Id.* ¶ 42. Both Defendants Pressley and Gonzales were "deliberately indifferent to [Decedent's] health and safety as she was left in her cell to die for approximately ten (10) minutes." *Id.* ¶ 42. Plaintiffs allege that Decedent had "been experiencing a medical emergency for an appreciable amount of time prior to her death" and Decedent's need for "medical intervention went unnoticed by the KCSO custody and medical staff …" *Id.* ¶¶ 43-44. Plaintiffs further allege that Defendants Gonzales and Pressley failed to conduct a required safety check but provide no particulars thereto. *Id.* ¶ 86.

Plaintiffs do not allege in the operative complaint that either Defendant Gonzales or Pressley had prior contact with Decedent, nor that either Defendant had been informed or otherwise had reason to know Decedent necessarily was at a heightened risk of harm. "To make out [their] claim of a constitutional violation, Plaintiff[s] must show that Defendants made these decisions with 'reckless disregard' of an imminent risk that [Decedent] would commit suicide." *Hernandez*, 2020 WL 3101041, at *4. Plaintiffs do not allege that Pressley and Gonzales, as floor deputies, were observing, or should have been observing, the security footage at the time before the incident and failed to act.

Plaintiffs plead only that Defendants Pressley and Gonzales found Decedent hanging in her cell. Plaintiffs offer no facts setting forth their knowledge of a heightened risk and a "reckless disregard" of that risk. *Cf. NeSmith v. Olsen*, 808 F. App'x 442, 445 (9th Cir. 2020) ("… the Deputies observed a rope hanging from NeSmith's light on the night before his suicide. Under those circumstances, the rope presented a clear warning that NeSmith presented an imminent suicide risk. Every reasonable official would [have understood] that failing to recognize that risk

10

violated NeSmith's rights.") (citations and quotations omitted; alteration in original).

### iii.  Analysis – Third Cause of Action

The Court finds that Plaintiff's third cause of action fails against Defendants Gonzales, Miller, and Pressley for the same reasons as noted above.  Namely, Plaintiffs have failed to sufficiently allege that any of said Defendants exhibited deliberate indifference.  *See Schwarz v. Lassen Cnty. ex rel. Lassen Cnty. Jail*, 628 F. App'x 527, 528 (9th Cir. 2016) ("Recovery for a violation of the right to familial association is generally contingent on the existence of an underlying constitutional violation.  Therefore, because there is no evidence that either Undersheriff Mineau or Lassen County was deliberately indifferent to Parker's serious medical needs, Schwarz's claim for loss of familial association—which is predicated on their purportedly unconstitutional care of Parker—likewise fails as a matter of law.") (citation omitted).

### B.  Federal Claims Against County Entities

### i.  Legal Standard

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.*  Local governments are responsible only for their own illegal acts; they are not vicariously liable for their employees' actions.  *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

A municipality is held liable only when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort."  *Monell*, 436 U.S. at 691.  This "official municipal policy" need not be expressly adopted, "[i]t is sufficient that the constitutional violation occurred pursuant to a longstanding practice or custom."  *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citation and quotations omitted).  A policy can also be one of action or inaction, such as a failure to train employees when such omissions amount to the government's policy.  *See Long*, 442 F.3d at 1189 ("[A] county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference[.]").

11

Thus, to establish a § 1983 claim for municipal liability, Plaintiff must show: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Burke v. County of Alameda*, 586 F.3d 725, 734 (9th Cir. 2009).

Courts in the Ninth Circuit use a two-part test to evaluate whether factual allegations regarding municipal liability are sufficiently pled: "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

"Under Ninth Circuit precedent, [a] policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations.  In an 'omission' action, a plaintiff must show the municipality's policy of inaction amounts to deliberate indifference to the plaintiff's constitutional right, and that the policy caused the violation, in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Fosbinder v. Cnty. of San Diego*, No. 24-CV-733-RSH-SBC, 2024 WL 4631275, at *10 (S.D. Cal. Oct. 30, 2024) (alterations in original; quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012)).

### ii. Analysis – Monell Claims

County Defendants seek dismissal of the fourth cause of action, as well as *Monell* claims they state are included within the first, second, third, and fifth causes of action. *See* (Doc. 37-1 at 20-22).

Plaintiffs allege that the County and high-level supervisors such as Defendant Youngblood "knew or should have known of a history of years of notice of ongoing failure to provide inmates indicated and timely reasonable medical/mental health care," "inadequate and/or incompetent

12

staffing, insufficient and inadequate cells and beds, incompetent and inadequate provision of health care and delivery thereof, denying access to outside hospitals or other mental health programs," and "failure to take corrective measures, including ignoring judicial orders to abate or take corrective action …" (Doc. 27 ¶ 49). Plaintiffs also allege that, in 2023, KCSO jails have recorded 11 in-custody deaths, including five from natural causes and six from suicide. *Id.* ¶ 51. Plaintiffs further plead that, from January 2008 through December 2023, 22 inmates have died by suicide within the jails of the County of Kern. *Id.* ¶ 53. Plaintiffs provide ten other instances dating from 2020 to 2023 where individuals died while detained in County facilities as a result of suicide, or circumstances suggestive of suicide. *Id.* ¶¶ 54-63.

County Defendants argue that, where a plaintiff fails to adequately plead deprivation of a constitutional right, the *Monell* claims fail as a matter of law. (Doc. 37-1 at 21; citing *Cavanaugh v. Cnty. of San Diego*, No. 3:18-CV-02557-BEN-LL, 2020 WL 6703592, at *36 (S.D. Cal. Nov. 12, 2020), *judgment entered*, No. 18-CV-02557-BEN-LL, 2020 WL 6702029 (S.D. Cal. Nov. 13, 2020), *and aff'd*, No. 20-56311, 2021 WL 6103115 (9th Cir. Dec. 22, 2021).

In *Cavanaugh*, the Court of Appeals reasoned that, "[b]ecause the complaint did not adequately plead a constitutional violation by the individual defendants, the district court correctly dismissed the *Monell* claim against San Diego County." *Cavanaugh v. Cnty. of San Diego*, No. 20-56311, 2021 WL 6103115, at *1 (9th Cir. Dec. 22, 2021).

The Court finds that, as Plaintiffs have failed to plead any underlying constitutional violations by the individual Defendants, Plaintiffs' *Monell* claims fail. *See Harris v. Cnty. of San Diego*, No. 3:24-CV-2117-JES-KSC, 2025 WL 2441046, at *6 (S.D. Cal. Aug. 25, 2025) ("Although Plaintiff alleged constitutional violations against Sheriff Martinez and doe defendants, such claims are not adequately pled, as stated above. As discussed above, Plaintiff fails to allege a violation of his constitutional rights by any individual. Therefore, Plaintiff's *Monell* cause of action against the County is [dismissed].").

Additionally, any *Monell* claims included within the first, second, third, and fifth causes of action are brought against improper defendants. The first, second, and third causes of action are brought against individual County Defendants, not municipal entities, and thus include improper

13

defendants for any *Monell* claims. The fifth cause of action is brought against the supervisory County Defendants, sued in their individual capacity. The fifth cause of action, thus, also includes improper defendants for any *Monell* claims.

Therefore, the *Monell* claims included in the first, second, third, fourth, and fifth causes of action are subject to dismissal.

### *iii.   Analysis – Inclusion of Both County and KCSO*

Next, the Court addresses County Defendants' contention that the KCSO is a redundant Defendant, in a manner similar to how an individual named in an official capacity is redundant when named alongside the entity with which they are affiliated, and thus, KCSO should be dismissed from the action. (Doc. 37-1 at 12-14).

The Ninth Circuit recently reaffirmed its prior holdings that both a California municipal police department and a California county sheriff's department were "public entities" that may be sued. *See Duarte v. City of Stockton*, 60 F.4th 566, 573 (9th Cir. 2023) ("As to the Stockton Police Department, we held over thirty years ago that municipal police departments in California 'can be sued in federal court for alleged civil rights violations.' More recently, we reaffirmed this holding and extended it to California's county sheriffs' departments.") (citing *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 n.2 (9th Cir. 1988) & *Streit v. Cnty. of Los Angeles*, 236 F.3d 552, 565–66 (9th Cir. 2001)); *see also Hulet v. Cnty. of Tuolumne*, No. 1:23-CV-01217-KES-HBK, 2024 WL 3758360, at *5 (E.D. Cal. Aug. 12, 2024) (analyzing *Duarte* and finding the same).

As to the redundant defendant theory put forth by County Defendants, another judge of this Court recently analyzed a similar contention. In *Chapple v. County of Sacramento*,[4] the defendant County of Sacramento and the Sacramento County Sheriff's Department argued that claims against the department failed because it is not a distinct legal entity from the county and, as the department is a unit of the county, it is redundant. In support of their argument, the *Chapple* defendants relied upon *Pierce v. San Mateo Cnty. Sheriff's Dep't*, 232 Cal. App. 4th 995, 1000 n.1 (2014).

The court, ruling on motions to dismiss, found that the "'rationale' the County and Department rely upon in *Pierce* is a one sentence footnote" and that there "is no analysis in this

---

[4] No. 2:24-CV-01939-TLN-CSK, 2025 WL 1678402 (E.D. Cal. June 13, 2025).

14

footnote to support the redundant defendant theory that the Department and the County propose here." *Chapple*, 2025 WL 1678402, at *10 (citing *Hulet*, 2024 WL 3758360, at *5; *Est. of Debbs v. Cnty. of Sacramento*, No. 2:20-CV-01153-TLN-DB, 2023 WL 4108320, at *4 (E.D. Cal. June 21, 2023); & *Harris by & through Lester v. Cnty. of Sacramento*, No. 2:17-CV-02346-MCE-AC, 2018 WL 3752176, at *3 (E.D. Cal. Aug. 8, 2018)).   The Court observed it was "unclear whether this statement was meant to refer only to the San Mateo County Sheriff's Department or to all sheriff's departments generally" and that courts "have found § 1983 actions can proceed simultaneously against a County and a Sheriff's Department.  The Department and County's arguments to the contrary are unpersuasive at this stage." *Id*.

County Defendants cite *Brown v. County of Kern*[5] for the proposition that the Eastern District of California has previously found that the County of Kern was the proper defendant in a section 1983 action and KCSO was not appropriately included.  However, in support, *Brown* cites to an opinion of the Northern District of California that predates both *Streit* and *Duarte*, as well as an out-of-circuit opinion from the District of Colorado.

County Defendants additionally cite *Shannon v. County of Sacramento*[6] for the proposition that KCSO is duplicative as the theories brought against it and the County of Kern are identical, and to *Morales v. City of Delano*[7] for the proposition that including both KCSO and the County of Kern ignores the possibility of a double recovery award against a single funding source.

However, *Shannon* predates *Duarte* and its conclusion that it is "unnecessary to sue both a county and the county sheriff's office for identical claims with identical theories of liability" is preceded by discussion that sheriff's departments, when standing alone, are generally not considered "persons" for purposes of section 1983.  *Shannon*, 2016 WL 1138190, *6 (citing *United States v. Kama*, 394 F.3d 1236, 1239–40 (9th Cir. 2005) (Ferguson, J., concurring)).  The Ninth Circuit in *Duarte* expressly discounted said reading of the decision in *Kama*, referring to the same quote from the concurrence cited in *Shannon*, and explained that "concurring opinions have no

---

[5] No. 1:06-CV-00121-OWW-TAG, 2008 WL 544565, at *3 (E.D. Cal. Feb. 26, 2008).
[6] No. 2:15-CV-00967-KJM-CKD, 2016 WL 1138190, at *6 (E.D. Cal. Mar. 23, 2016).
[7] No. 1:10-CV-1203-AWI-JLT, 2010 WL 2942645, at *5 (E.D. Cal. July 23, 2010).

binding precedential value" and that the concurrence did not cite *Karim-Panahi* or *Streit*. *Duarte*, 60 F.4th at 574 (citations and quotations omitted) (reversing district judge's determination that the City of Stockton and Stockton Police Department are not persons within the meaning of § 1983.).

Similarly, *Morales* also predates *Duarte* and cites the same quote from the concurrence in *Kama* before finding that allowing "the matter to proceed against the agency of the City of Delano and the City itself, ignores the likelihood of an improper award of a double recovery against a single funding source." *Morales*, 2010 WL 2942645, at *4-5 (citing, *inter alia*, *Kama*, 394 F.3d at 1240).

In all events, the Court finds that any risk of "double recovery" incumbent in the inclusion of both county defendants adequately can be addressed through appropriate jury instructions and verdict form prompts. Thus, at this stage, the Court finds unpersuasive County Defendants' arguments that the inclusion of the County of Kern as a defendant renders KCSO redundant in this action. As to dismissal of KCSO on this ground, County Defendants' motion will be denied.

### C. Federal Claims Against Supervisory Defendants

#### i.  *Legal Standard*

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see*, *e.g.*, *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (noting that liability attaches if the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that a subordinate did"), *overruled on other grounds by Castro*, 833 F.3d at 1070; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009); accord *Starr*

*v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010).  When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979).  Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

### ii.  Analysis

Plaintiffs bring supervisory liability claims pursuant to section 1983 against Defendants Harkey and Youngblood.  (Doc. 27 at 41-44).  Plaintiffs allege that Defendant Youngblood should have known of years of "ongoing failure to provide inmates … medical/mental health care," "inadequate and/or incompetent staffing," "inadequate cells and beds," "inadequate provision of health care," denial of "access to outside hospitals or other mental health programs," and "failure to take corrective measures."  Plaintiffs state that Defendant Youngblood was on notice of said deficiencies and the "number of lawsuits against the [County] … and the evidence available from those actions is troubling and demonstrative of Defendants' years of deliberate indifference …" *Id.* ¶ 49.

Plaintiffs further allege that Defendants Harkey and Youngblood failed to properly hire and train the employees of their agencies; failed to monitor, investigate, and discipline employees; and ratified unconstitutional customs, policies, practices, and procedures.  These acts or omissions,

Plaintiffs allege, were a proximate cause of the deprivations that led to violation of Decedent's constitutional rights. *Id.* ¶ 129-135. In support of these pleadings, Plaintiffs allege only the same facts as noted *supra* in subsection (B)(ii) discussing the *Monell* claims, namely prior cases of in-custody deaths and suicides. Plaintiffs' primary contention is that, as Sheriff, Defendant Youngblood's inaction and acquiescence resulted in constitutional deprivations and the actions or omissions of the individual County Defendants were ratified by Defendants Harkey and Youngblood. *See id.*

First, as noted *supra* in subsection (A)(ii), Plaintiffs fail to plead any cognizable claims for relief against the individual County Defendants. It follows that Plaintiffs, thus, fail to adequately allege any acquiescence from the supervisory Defendants in such claims. Second, Plaintiffs do not set forth any identifiable policy, custom, or practice implemented by any supervisory County Defendant that was so deficient that the policy itself is a repudiation of the constitutional rights at issue and is the moving force of the constitutional violations alleged herein. Rather, Plaintiffs advance only conclusory and general allegations that the supervisory Defendants ratified unconstitutional policies. Third, the factual pleadings offered by Plaintiffs in support of the *Monell* claims do not, by themselves, support supervisory liability claims. To credit such allegations standing alone as supporting supervisory liability would, in effect, impose vicarious liability, which is impermissible in section 1983 actions. *See Keates v. Koile*, 883 F.3d 1228, 1242 (9th Cir. 2018) ("Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution.") (quotation omitted). In any event, the Court has found that the *Monell* claims fail, as well, for Plaintiffs' failure to plead any cognizable claims against the individual County Defendants.

Thus, Plaintiffs fail to plead cognizable claims against Defendants Harkey and Youngblood under a theory of supervisory liability. *See*, *e.g.*, *Keates*, 883 F.3d at 1243 ("The complaint here does not allege that Carter was directly involved in the allegedly unconstitutional conduct or that he had knowledge of the constitutional deprivations and acquiesced in them. Rather, the complaint makes conclusory allegations that Carter promulgated unconstitutional policies and procedures

which authorized the particular conduct in this case and thus directly caused Koile's allegedly unconstitutional conduct. These allegations do not suffice to state a claim of supervisory liability."); *Est. of Miller v. Cnty. of Sutter*, No. 2:20-CV-00577-KJM-DMC, 2020 WL 6392565, at *14 (E.D. Cal. Oct. 30, 2020) ("The complaint here does not allege the Sheriff made any decisions about Miller's care. It does little more than recite the elements of a claim for supervisory liability."); *Kidwell-Bertagnolli v. Cnty. of Sonoma*, No. 20-CV-03291-JSC, 2020 WL 4901197, at *4 (N.D. Cal. Aug. 20, 2020) ("These allegations, however, do not indicate that Sheriff Essick was 'directly involved in the allegedly unconstitutional conduct' which resulted in Mr. Bertagnolli's death or that 'he had knowledge of the constitutional deprivations and acquiesced in them. Rather, the complaint makes conclusory allegations that [Sheriff Essick] promulgated unconstitutional policies and procedures which authorized the particular conduct in this case and thus directly caused [Deputy Ordaz and Deputy 1-10's] allegedly unconstitutional conduct.'") (alterations in original; quoting *Keates*, 883 F.3d at 1243).

### D. Qualified Immunity

#### i. Legal Standard

The doctrine of qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In evaluating a claim of qualified immunity, a court must determine whether, (1) taken in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and (2) if so, whether the right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In its qualified immunity analysis, a court may use either prong as its starting point and, thus, exercise its "discretion to resolve a case only on the second ground when no clearly established law shows that the officers' conduct was unconstitutional." *O'Doan v. Sanford*, 991 F.3d 1027, 1036 (9th Cir. 2021).

Under the first prong of the analysis, "whether a constitutional right was violated … is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009); *see Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (explaining that under the first prong of

the qualified immunity analysis, the court considers whether the facts show a violation of a constitutional right).  In contrast, "the 'clearly established' inquiry is a question of law that only a judge can decide." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017); *see Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent," meaning "it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'" *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011)).  Stated differently, "[a] right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir. 2024) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021)) (citation omitted).  A section 1983 plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct.  *Hopson v. Alexander*, 71 F.4th 692, 708 (9th Cir. 2023) ("There is no analogous burden on § 1983 defendants to find factually on-point cases clearly establishing the lawfulness of an officer's actions.  Nor must § 1983 defendants come forward with precedent showing that the unlawfulness of their conduct was not clearly established."); *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).

"For a constitutional right to be clearly established, a court must define the right at issue with specificity and not … at a high level of generality." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (internal quotations and citation omitted).  When identifying the right that was allegedly violated, a court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than all of the factual circumstances surrounding the alleged violation. *See Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1092–93 (9th Cir. 1998).  "The Supreme Court has 'repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage of litigation." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)).

While a defendant may raise a qualified immunity defense at an early stage in the proceeding, the defense may not be amenable to dismissal by way of a motion made pursuant to

Rule 12(b)(6) where facts necessary to establish the affirmative defense implicate matters outside the complaint or disputed issues of fact. *See Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999). Nevertheless, a qualified immunity defense properly may be resolved by a Rule 12(b)(6) motion bearing in mind that, on a motion to dismiss, a court must accept the allegations in the complaint as true when determining whether a defendant is entitled to immunity. *See Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023); *see also Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

### ii. Analysis

It is plain that, at the time of the events at issue, the law was clearly established that pretrial detainees had a Fourteenth Amendment right to be free from deliberate indifference to their medical needs, including the risk of suicide. *See Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1245 (9th Cir. 2010), *overruled on other grounds by Castro*, 833 F.3d 1060; *Wright v. Dunne*, No. 15-CV-02671-TLN-CKD, 2020 WL 977963, at *8 (E.D. Cal. Feb. 28, 2020) ("The Court agrees that there exists a clearly established right to be free from deliberate indifference to serious mental health needs, including risk of suicide.") (citing *Clouthier*, 591 F.3d at 1245)). However, this general statement of law does not define in this case the applicable constitutional right at issue for purposes of determining the applicability of qualified immunity. *See Gordon*, 6 F.4th at 968; *Watkins*, 145 F.3d at 1092-93.

Plaintiffs bear the burden of proof to show that the rights allegedly violated were clearly established at the time of the alleged misconduct. *See Hopson*, 71 F.4th at 708. However, Plaintiffs cite to no authority in support of their assertion that County Defendants are not entitled to qualified immunity. *See* (Doc. 39). The Court has conducted an independent review of relevant authority and finds that, under the facts as pled in the operative complaint, the County Defendants are entitled to qualified immunity.

In *Taylor v. Barkes*,[8] the Supreme Court reversed the Third Circuit's holding that the Eighth Amendment granted prisoners the "right to the proper implementation of adequate suicide prevention protocols." *Taylor*, 575 U.S. at 824. Relevant Ninth Circuit precedent holds similarly,

---

[8] 575 U.S. 822 (2015).

namely, that pre-trial detainees have a right to be "free from deliberate indifference to their serious risk of suicide but not a right to suicide screening or prevention protocols." *Est. of Funabiki by & through Funabiki v. Cnty. of Whitman*, No. 2:21-CV-00089-MKD, 2024 WL 4425682, at *11 (E.D. Wash. Oct. 5, 2024) (collecting cases); *see NeSmith v. Cnty. of San Diego*, No. 15CV629 JLS (JMA), 2016 WL 4515857, at *6 (S.D. Cal. Jan. 27, 2016) (finding that "the Supreme Court was clear in *Taylor* that cases holding that reckless or deliberate indifference to suicidal tendencies of particular inmates do not, for purposes of qualified immunity, establish an affirmative obligation to implement a government entity-wide suicide prevention policy"); *Germaine-McIver v. Cnty. of Orange*, No. SACV 16-01201-CJC (GJSx), 2018 WL 6258896, at *11-12 (C.D. Cal. Oct. 31, 2018) ("The Ninth Circuit has also not clearly established any right to a certain standard of suicide prevention protocols … *Cabrales* and *Conn* fail to develop any right in such a concrete and factually defined context to make it obvious to all reasonable government actors …") (quotation and citation omitted) (referencing *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454 (9th Cir. 1988), *cert. granted, judgment vacated*, 490 U.S. 1087 (1989), *and opinion reinstated*, 886 F.2d 235 (9th Cir. 1989), & *Conn v. City of Reno*, 591 F.3d 1081, 1102 (9th Cir. 2010), *cert. granted, judgment vacated sub nom. City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *and opinion reinstated*, 658 F.3d 897 (9th Cir. 2011)).

As noted *supra*, Plaintiffs have failed to advance any cognizable claims of deliberate indifference to Decedent's serious risk of suicide by the individual County Defendants. At the time of the events set forth in the operative complaint, clearly established law did not obligate the individual County Defendants to conduct certain specific screening or prevention protocols. As such, under the facts as pled in the operative complaint, Defendants Gonzales, Miller, and Pressley are entitled to qualified immunity.

Regarding supervisory Defendants Harkey and Youngblood, Plaintiffs bring only vague claims of failure to properly hire, train, and discipline employees; promulgation of deficient policies, customs, or practices; and ratification of unconstitutional policies, customs, or practices. At the time of the events set forth in the operative complaint, clearly established law did not obligate the supervisory County Defendants to implement a specific, or superior, suicide treatment or

22

prevention policy.  It follows that, under the facts as pled in the operative complaint, Defendants Harkey and Youngblood are entitled to qualified immunity.  *See NeSmith*, 2016 WL 4515857, at *7 ("Although particular government actors are obligated not to act with deliberate indifference to a particular inmate's suicidal ideations, based on *Taylor*, that does not clearly establish a broader duty for government entities to implement a suicide prevention policy that meets certain unspecified standards.").

### E.  State Law Claims

#### i.  *Negligence – Wrongful Death*

A claim for negligence under California law requires a plaintiff to show that the defendant (1) had a legal duty to use reasonable care; (2) breached that duty; and that (3) the breach was the proximate cause of (4) the plaintiff's injury.  *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998). "In California, prison officials owe detainees a duty to protect them from foreseeable harm." *Cotta v. County of Kings*, 686 F. App'x 467, 469 (9th Cir. 2017) (citing *Giraldo v. Cal. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231 (2008)).  Unless the law provides otherwise, public employees are liable to the same extent as private persons, and "public entities are generally liable for injuries caused by the negligence of their employees acting in the scope of their employment." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013).  The Court acknowledges that the standard of culpability for a negligence claim is a "much lower level" than the standard for a deliberate indifference claim.  *Cravotta*, 717 F. Supp. 3d at 967 (citing *Castro*, 833 F.3d at 1071).

Plaintiffs allege that Defendants Gonzales, Miller, and Pressley's failed to "conduct the required safety check" of Decedent's holding cell on the date of her death. (Doc. 27 ¶ 86).  Taking as true Plaintiffs' allegation that these Defendants' failed to discharge their duty to take some mandatory action in the lead-up to Decedent's death, the Court finds this allegation sufficient to state a cognizable claim of negligence as to Defendants Gonzales, Miller, and Pressley and, it follows, as to the County of Kern and KCSO.  *See* Cal. Gov't Code § 815.2; *Hayes*, 57 Cal. 4th at 629.

As to Defendants Harkey and Youngblood, Plaintiffs' only relevant allegations in the FAC are those noted *supra* regarding supervisory liability.  Without more, the Court cannot discern any

theory of negligence cognizable against Harkey and Youngblood. *See Cravotta*, 717 F. Supp. 3d at 967 ("Plaintiff has failed to allege how the Officer Defendants breached that duty here, or how that breach caused Plaintiff injury. Plaintiff has not alleged the Officer Defendants failed to conduct direct-view safety checks, or failed to administer life saving measures they were medically trained to administer. Plaintiff has also not alleged how any such measures could have produced a different outcome."). Plaintiff fails to allege what duty was breached by Harkey and Youngblood, and how, and importantly, how any such breach caused Decedent's injury and/or damages.[9]

### ii.  California Government Code § 845.6

California Government Code § 845.6 "imposes liability on the public employee and public entity when: (1) the public employee knows or has reason to know of the need, (2) for a prisoner's immediate medical care, and (3) fails to take reasonable action to summon such medical care. Liability under section 845.6 is established by serious and obvious medical conditions requiring immediate care." *Borges v. City of Eureka*, No. 15-CV-00846-YGR, 2017 WL 363212, at *18 (N.D. Cal. Jan. 25, 2017) (internal quotations and citations omitted) (citing *Watson v. State of California*, 21 Cal. App. 4th 836, 841 (1993), & *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013)).

A public employee and public entity are liable under § 845.6 only for a failure to summon medical care. Any failure to provide further treatment, or to ensure further diagnosis, is not actionable under § 845.6. *Castaneda*, 212 Cal. App. 4th at 1072. Under § 845.6, a public entity is vicariously liable for the acts of its employees within the scope of their employment. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 605 (9th Cir. 2019) (citing Cal. Gov't Code § 815.2).

Here, Plaintiffs do not identify any basis for their § 845.6 claims aside from the alleged federal constitutional violations. Plaintiffs do not plead any facts showing that County Defendants

---

[9] Although the negligence cause of action is not dismissed as to the other individual County Defendants, it is unlikely the Court would exercise supplemental jurisdiction over this claim given dismissal of the section 1983 claims against these Defendants, unless Plaintiffs amend their complaint to cognizably plead their section 1983 causes of action. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

24

failed to summon medical care despite knowing, or having a reason to know, of such need.  As such, Plaintiffs fail to bring any cognizable claims under § 845.6 against any County Defendant.

### iii.  California Civil Code § 52.1 ("Bane Act")

A plaintiff alleging a Bane Act claim "must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015) (citing Cal. Civ. Code § 52.1).  The claim must allege facts that would allow an inference that the defendant had a specific intent to violate the constitutional right at issue.  *Id.* Specific intent may be shown by demonstrating that the defendant acted "in reckless disregard" of that right.  *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 803 (2017), *as modified* (Nov. 17, 2017).

Several district courts, including judges of this Court, "have adopted the position that a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs ... adequately states a claim for relief under the Bane Act because deliberate indifference claims extend far beyond ordinary tort claims and have been associated with affirmatively culpable conduct." *Cravotta*, 717 F. Supp. 3d at 964 (quotations and citation omitted) (collecting cases).

Here, Plaintiffs do not identify any basis for their Bane Act claims aside from the alleged federal constitutional violations.  As noted *supra*, Plaintiffs fail to adequately allege cognizable claims against all individual and supervisory County Defendants.  Thus, Plaintiffs fail to bring any cognizable Bane Act claims against them.  *See Cravotta*, 717 F. Supp. 3d at 965 ("However, as held above, Plaintiff has failed to sufficiently plead his deliberate indifference claim against the Officer Defendants.  Thus, the Court finds he has also failed to plead a Bane Act claim against the Officer Defendants, and the Bane Act claim against them is dismissed.").

Regarding the County of Kern and KCSO, pursuant to California Government Code § 815.2, Plaintiffs allege that they are vicariously liable for the acts or omissions of their employees committed within the course and scope of their employment.  (Doc. 27 ¶ 159).  However, Plaintiffs fail to cognizably plead any such acts or omissions.  Thus, Plaintiff's Bane Act claims against the

25

County of Kern and KCSO fail. *See Lapachet v. California Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1196 (E.D. Cal. 2018) ("Plaintiff argues that his complaint contains sufficient allegations against defendant Christianson so as to impose liability on the County. This argument is unavailing because, as already discussed above, plaintiff's complaint contains no factual allegations against defendant Christianson."); *cf. Brink v. Cnty. of San Diego*, No. 23CV1756 DMS (SBC), 2024 WL 3315992, at *8 (S.D. Cal. July 3, 2024) (discussing California statutory authority regarding county immunity from Bane Act claims, concluding that immunity does not attach where public employee knew or had reason to know that the prisoner was in need of immediate medical care and failed to take reasonable action to summon such care, and finding Bane Act claim against county sufficient where complaint alleged nurse defendants failed to summon medical care despite obvious symptoms).

## F.  Declaratory Relief

"The Ninth Circuit has directed district courts faced with whether to entertain claims for declaratory relief to consider, among other factors, whether the claim will settle all aspects of the controversy or serve some other useful purpose." *Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-CV-04769-RS, 2015 WL 7709655, at *9 (N.D. Cal. Apr. 13, 2015) (citing *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)).

Here, Plaintiffs set forth no independent useful purpose in their claim for declaratory relief that would not otherwise necessarily be answered upon adjudication of the other claims in the action. *See* (Doc. 39 at 21). The rights of the Plaintiffs, the obligations of the Defendants, and the legal relations between the parties will be necessarily clarified upon adjudication of the claims brought pursuant to section 1983 and under state law. Thus, the claims for declaratory relief will be dismissed as to the County Defendants. *See United States v. State of Wash.*, 759 F.2d 1353, 1357 (9th Cir. 1985) ("Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties.").

## G.  ADA and Rehabilitation Act

The provisions of section 504 the Rehabilitation Act and Title II of the Americans with

26

Disabilities Act apply to state prisons. *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1214, 1216 n.27 (9th Cir. 2008). These statutes only provide for claims against public entities, not public officials sued in their individual capacities. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) she is a qualified individual with a disability; (2) she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of her disability. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). "To establish a violation of § 504 of the [Rehabilitation Act], a plaintiff must show that (1) she is handicapped within the meaning of the RA; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely by reason of her handicap; and (4) the program providing the benefit or services receives federal financial assistance." *Id.*

"A plaintiff can allege disability discrimination in the provision of inmate services, programs, or activities under the ADA or the [Rehabilitation Act] by pleading either (i) discrimination based on disparate treatment or impact, or (ii) denial of reasonable modifications or accommodations." *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 1000 (E.D. Cal. 2017) (citing, *inter alia*, *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1086 (9th Cir. 2004)). "[F]acially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced." *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004). "To plead disparate treatment under the ADA or RA, a plaintiff must allege that other non-disabled individuals without plaintiff's disability were treated more favorably. To plead disparate impact, a plaintiff must allege that a facially neutral policy has a significantly adverse or disproportionate impact on disabled persons. Finally, to plead a failure to accommodate under the ADA or RA, a plaintiff must allege that a public entity knew of plaintiff's disability but failed to provide reasonable accommodations." *Atayde*, 255 F. Supp. 3d at 1001 (citing, *inter alia*, *McGary*, 386 F.3d at 1265-66).

Plaintiffs allege their eleventh and twelfth causes of action against "Defendants [Does] 1 through 10." (Doc. 27 at 54-56). Within each cause of action, Plaintiffs name only Defendants County of Kern and KCSO. Insofar as Plaintiffs intend to bring such claims against any defendants

27

sued in their individual capacities, any such defendant would be improper.  Additionally, claims of inadequate medical care as to a plaintiff's disabilities are not cognizable under the ADA and Rehabilitation Act.  *See Alexander v. Tilton*, No. 1:07-CV-00759-LJO-DLB PC, 2009 WL 464486, at *7 (E.D. Cal. Feb. 24, 2009) (collecting cases).

Here, Plaintiffs do not allege that Decedent was denied access to a type of activity, program, or benefit because of a disability or her status as postpartum.  Nor do Plaintiffs allege that she was treated differently than non-disabled inmates or other disabled inmates were treated more favorably.  *See Pastora v. Cnty. of San Bernardino*, No. EDCV 21-1410 JGB (SPX), 2021 WL 8743941, at *6 (C.D. Cal. Dec. 22, 2021) (dismissing ADA claims where Plaintiff failed to allege denial of access because of her disability or different treatment).

Thus, Plaintiffs fail to plead cognizable claims under the ADA and Rehabilitation Act and the eleventh and twelfth causes of action will be dismissed.

### H.  Leave to Amend

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires" as the purpose of the Rule is "to facilitate decision on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  However, courts may, in their discretion, choose to decline leave to amend due to futility, bad faith, undue delay, prejudice to the opposing parties, dilatory motive or conduct, or a repeated failure to cure deficiencies by amendments.  *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–893 (9th Cir. 2010).  A court's discretion in denying leave to amend is particularly broad after plaintiff has already been afforded an opportunity to amend the complaint.  *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016).

Here, Plaintiffs request leave to amend if any portion of County Defendants' motion is granted.  (Doc. 39 at 23).  The Court finds that the above deficiencies may be remedied by amendment and will extend leave to amend.

### IV.  Conclusion and Order

Based on the foregoing, IT IS HEREBY ORDERED that:

1. County Defendants' motion to dismiss (Doc. 37) is GRANTED in part:

   a. The motion is GRANTED as to the first, second, third, fourth, fifth, eighth, ninth, tenth, eleventh, and twelfth causes of action and said causes of action are DISMISSED without prejudice against the County Defendants;

   b. The motion is DENIED as to the sixth cause of action and the dismissal of the Kern County Sheriff's Office;

2. Plaintiffs are GRANTED leave to amend all claims dismissed without prejudice;

3. Within 14 days of entry of this order, Plaintiffs SHALL file any second amended complaint; and

4. County Defendants SHALL file their response to any second amended complaint within 14 days of Plaintiffs' filing.  *See* Fed. R. Civ. P. 15(a)(3).

IT IS SO ORDERED.

Dated:   **January 30, 2026**   _____
                               UNITED STATES MAGISTRATE JUDGE

29