UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ESTATE OF IRENE RIVERA, *et al.*,

Plaintiffs,

v.

KERN COUNTY SHERIFF'S OFFICE, *et al.*,

Defendants.

Case No. 1:24-cv-01141-CDB

ORDER GRANTING DEFENDANTS KERN COUNTY HOSPITAL AUTHORITY AND JULIUS QUILALA'S SECOND MOTION TO DISMISS

(Doc. 49)

**Deadline – Aug. 19, 2026**

Pending before the Court[1] is the motion of Defendants Kern County Hospital Authority ("KCHA") and Julius Quilala (collectively, the "Hospital Defendants") to dismiss all claims against them asserted in the operative, second amended complaint. (Doc. 49). On March 13, 2026, Plaintiffs Estate of Irene Rivera, through successor in interest R.R.; R.R., through guardian ad litem Bertha Rivera; Bertha Rivera, individually; and Jose Rivera ("Plaintiffs") filed an opposition to the motion to dismiss, and on March 23, 2026, the Hospital Defendants filed a reply. (Docs. 52, 53).

**I. Background**

On September 24, 2024, Plaintiffs initiated this action with the filing of a complaint. (Doc. 1). On July 8, 2025, Plaintiffs filed the first amended complaint. (Doc. 27). On August 22, 2025,

[1] Following all parties' expression of consent to the jurisdiction of a magistrate judge for all further proceedings in this action, including trial and entry of judgment, on February 10, 2025, this action was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c)(1). (Doc. 24).

the Hospital Defendants filed a motion to dismiss all claims asserted against them in the first amended complaint. (Doc. 36). On January 30, 2026, the Court granted the motion. (Doc. 43). Plaintiffs filed the operative second amended complaint ("SAC") on February 12, 2026, against the County of Kern, Kern County Sheriff's Office ("KCSO"), Donny Youngblood, Samuel Flores Gonzales, Matthew Harkey, Mark Miller, Lexi Pressley (collectively, the "County Defendants"), the KCHA, and Julius Quilala. (Doc. 47).

The Court notes that Hospital Defendants' motion is untimely. *See* (Doc. 49). Linda Werner, counsel for Hospital Defendants, filed a declaration asserting that the delay was less than three hours and a result of technical difficulties related to the two-factor authentication system for Ms. Werner's CM/ECF account. *See* (Doc. 51). Counsel provides that, to her knowledge, "this brief delay caused no prejudice to Plaintiffs." *Id.* ¶ 9. As Plaintiffs do not attempt to rebut in their opposition papers Ms. Werner's characterization of the lack of prejudice resulting from the brief delay (*see* Doc. 52), and given the lack of any evidence of bad faith and the short length of the delay, the Court finds the late filing was due to excusable neglect and will proceed to evaluate the motion to dismiss on the merits.

In the SAC, Plaintiffs allege that, on September 10, 2023, Irene Rivera ("Decedent") was suffering from a mental health crisis and was arrested by the Bakersfield Police Department. She was booked into the KCSO's Central Receiving Facility ("CRF") in Bakersfield, California. (Doc. 47 ¶ 35). At approximately 2:24 a.m. that same day, Decedent was housed "alone" in the C-Deck Court Holding Cell, C3-1. She was evaluated by Defendant Quilala and "cleared [] to remain housed at the CRF." Defendant Quilala was "responsible for conducting an initial intake screening within two (2) hours of booking for postpartum inmates like [Decedent]." *Id.* ¶ 36.

Plaintiffs allege that, during the "receiving screening process," registered nurses like Defendant Quilala are "expected to identify detainees who pose a threat to self or others health and/or safety," and registered nurses performing such a screening "must inquire as [to] an individual's state of health," including "past or current mental illness; history of or current suicidal ideation; substance abuse; withdrawal symptoms (current or prior); and possible, current or recent

pregnancy." After initial screening, the registered nurse "will complete a referral to an appropriate health care service and/or schedule follow-up care (e.g., mental health referral)." *Id.* ¶ 37.

Plaintiffs allege in the SAC that Defendant Quilala "failed to identify [Decedent] as a postpartum inmate who was at a heightened risk of harm," despite "KCHA's own policies requiring that medical staff must inquire as to an individual's state of health, specifically a recent pregnancy." Defendant Quilala "also failed to initiate a referral to mental health despite being responsible for completing a referral following the initial receiving screening." *Id.* ¶ 38. Following screening, Defendant Quilala "cleared [Decedent] for housing in a holding cell alone without any designation regarding her state of health, specifically as a postpartum inmate, that would alert those in charge of her care that she required further" monitoring and care due to heightened risk of harm. *Id.* ¶ 39.

Postpartum inmates have the "right to immediate medical attention, including attention for drug or alcohol treatment or withdrawal, and an immediate referral to a health care provider," according to KCSO Policy H-100 and "pursuant to the *Yeager* Class Action."[2] *Id.* ¶ 40. Decedent met with Defendant Mark Miller, a classification deputy, upon booking and "expressed concerns that less than three (3) months prior to arrest she had given birth to her infant daughter, R.R., and therefore postpartum." Postpartum inmates are "defined as three (3) months or less from having given birth, miscarried, or aborted. KCSO custody staff are required to provide pregnant or postpartum inmates with a pink wrist band to alert those in charge that an inmate has been identified as pregnant or postpartum," according to Policy H-100. *Id.* ¶¶ 41-42. Decedent was "placed in a holding cell following her classification assessment by Defendant [Miller] without any designation regarding her medical condition that would alert those in charge of [Decedent's] desperate need for a higher level of care," despite Decedent being "less than three (3) months postpartum, and despite obvious signs that [Decedent], an inmate-patient at the [County] [j]ails, suffered from mental health issues and substance abuse which are known indicators for a heightened risk of suicide." *Id.* ¶ 43.

On September 10, 2023, at approximately 2:45 a.m., Decedent is observed, on surveillance footage, "wrapping a plastic trash bag around her neck. [Decedent] is then observed on the

---

[2] Plaintiffs reference *Yeager, et al. v. Smith, et al.*, Case No. 1:87-cv-00493-REC. (E.D. Cal. Dec. 18, 1989). *See id.* ¶ 6.

surveillance footage climbing onto a bench located within her cell and steps off the bench with both feet suspended off the ground." *Id.* ¶ 45. At approximately 2:54 a.m. and "nearly ten (10) minutes later," Defendant Pressley finds Decedent hanging in her cell. Defendants Pressley and Gonzales "subsequently enter the cell and cut [Decedent] down. [Decedent] ultimately did not respond to lifesaving measures and was pronounced dead at 3:26 a.m." *Id.* ¶ 46.

Defendants Pressley and Gonzales had "ample opportunity to observe clear signs of [Decedent's] acute suicidality given that [Decedent] was fashioning a noose around her neck which was captured by the surveillance camera." Both Defendants Pressley and Gonzales were "deliberately indifferent to [Decedent's] health and safety as she was left in her cell to die for approximately ten (10) minutes." *Id.* ¶ 47. Plaintiffs assert that Decedent had "been experiencing a medical emergency for an appreciable amount of time prior to her death" and Decedent's need for "emergency medical intervention went unnoticed by the KCSO custody and medical staff …" *Id.* ¶¶ 51-52. Plaintiffs allege that Defendants Pressley, Gonzales, Miller, and Quilala failed to "conduct the required safety check" of Decedent's holding cell. *Id.* ¶ 96.

Regarding the claims of municipal liability, Plaintiffs assert that in 2023 there were eleven in-custody deaths, including five from natural causes and six suicides, within KCSO jails. *Id.* ¶ 59. Plaintiffs allege Decedent was one of the six suicides in 2023 and the ninth death of the calendar year. *Id.* ¶ 60. Plaintiffs further allege that, from January 2008 to December 2023, 22 inmates have died by suicide in jails within the County of Kern. *Id.* ¶ 61. Plaintiffs' SAC includes factual background for ten other deaths within County facilities. *See id.* ¶¶ 62-71.

## II. <u>Governing Authority</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981)). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010). The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). And "even 'well-pleaded facts' are not sufficient if they are accompanied by only '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Gibson v. City of Portland*, 165 F.4th 1265, 1292 (9th Cir. 2026) (quoting *Iqbal*, 556 U.S. at 678). The Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

"For a [Rule] 12(b)(6) motion, a court generally cannot consider material outside the complaint." *Hamilton v. Bank of Blue Valley*, 746 F. Supp.2d 1160, 1167 (E.D. Cal. 2010) (citing *Van Winkle v. Allstate Ins. Co.*, 290 F. Supp.2d 1158, 1162 n.2 (C.D. Cal. 2003)). "Nonetheless, a court may consider exhibits submitted with the complaint." *Id*. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of

the copy attached to the 12(b)(6) motion." *Id.* at 1168 (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)); accord, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F. 3d 1119 (9th Cir. 2002). "A court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Hamilton*, 746 F. Supp.2d at 1168 (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

## III. <u>Discussion</u>

### A. Federal Claims Against Defendant Quilala

#### 1. *Governing Authority*

To state a claim under section 1983, a plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (citing *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *West v. Atkins*, 487 U.S. 42, 48 (1988)). This requires the plaintiff to demonstrate that each defendant personally participated in the deprivation of his rights. *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007).

The Fourteenth Amendment protects the rights of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (noting that pretrial detainees' "rights arise under the Fourteenth Amendment's Due Process Clause"). Relevant here, the elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual defendant are:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. With respect to the third element, the

> defendant's conduct must be objectively unreasonable, a test that will necessarily turn[] on the facts and circumstances of each particular case.

*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (alteration in original; footnote, citation, and internal quotation marks omitted); *see Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

The Supreme Court has explained that there is "no significant distinction between claims alleging inadequate medical care and those alleging inadequate 'conditions of confinement.' Indeed, the medical care a prisoner receives is just as much a 'condition' of his confinement as ... the protection he is afforded against other inmates." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *see Gordon*, 888 F.3d at 1124 ("we have long analyzed claims that government officials failed to address pretrial detainees' medical needs using the same standard as cases alleging that officials failed to protect pretrial detainees in some other way").

Thus, to bring a pretrial detainee's failure to protect or inadequate medical care claim under the Fourteenth Amendment, a plaintiff must establish the same four factors as noted above. *Gordon*, 888 F.3d at 1125; *Castro*, 833 F.3d at 1071. In contrast to the knowing and purposeful state of mind in the first element, the remaining elements require an objective standard. *See Castro*, 833 F.3d at 1070-71. As noted *supra*, the third element must be viewed on each case's particular facts and circumstances, and the plaintiff must prove the defendant acted with "more than negligence but less than subjective intent – something akin to reckless disregard." *Sandoval*, 985 F.3d at 669 (quoting *Castro*, 833 F.3d at 1071).

The Fourteenth Amendment also protects liberty interests in the companionship between parents and children. "Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. Cal. Dep't. of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). "Only official conduct that shocks the conscience is cognizable as a due process violation … A prison official's deliberately indifferent conduct will generally 'shock the conscience' so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Id.* (citations and quotations omitted).

2. *Analysis*

Pursuant to section 1983, Plaintiffs assert as their first, second, and third causes of action violations of the Fourteenth Amendment for failure to protect from harm, failure to provide medical care, and deprivation of the right to a familial relationship with decedent, respectively. (Doc. 47 at 26-35). Here, because Decedent was a pretrial detainee, her rights derive from the due process clause of the Fourteenth Amendment. *See Bell*, 441 U.S. at 545. "The duty to protect detainees from suicide is grounded in the substantive liberty interest to adequate medical care." *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 988 (E.D. Cal. 2017).

Hospital Defendants argue that Plaintiffs failed to plead sufficient facts regarding what actions or inactions by Defendant Quilala support the assertions of deliberate indifference to Decedent's medical needs. (Doc. 49-1 at 5-7). Hospital Defendants assert that the SAC does not allege that Decedent expressed suicidal ideation or expressed any other information, or demonstrated any other behavior, that would suggest imminent self-harm. Hospital Defendants contend that "[p]ostpartum status, without individualized warning signs, does not constitute an objectively obvious suicide risk." *Id.* at 5. Hospital Defendants note that the SAC alleges that Defendant Quilala performed an initial screening and "failed to identify [Decedent] as a postpartum inmate and failed to initiate a referral to mental health," but argue that these allegations fail to show Defendant Quilala acted with deliberate indifference or reckless disregard. Hospital Defendants assert that SAC does not allege that Decedent "met the criteria for a mandatory referral," nor that "postpartum detainees must automatically be placed on suicide watch." *Id.* at 6. Separately, Hospital Defendants contend that the SAC does not adequately allege causation as it does not set forth that a "mental health evaluation would have occurred immediately or within 20 minutes," and would have resulted in suicide precautions, as Decedent died by suicide approximately 20 minutes after being booked and housed. *Id.* at 7. Hospital Defendants argue that "the only individual conduct specified in the SAC by Nurse Quilala was the performance of an initial assessment." *Id.* at 8.

As reflected in the allegations summarized above, Plaintiffs' theory of liability as to Defendant Quilala is that her initial/receiving screening of Decedent was constitutionally defective.

They allege that Defendant Quilala "failed to identify [Decedent] as a postpartum inmate who was at a heightened risk of harm," despite "KCHA's own policies requiring that medical staff must inquire as to an individual's state of health, specifically a recent pregnancy." Defendant Quilala "also failed to initiate a referral to mental health despite being responsible for completing a referral following the initial receiving screening." *Id.* ¶ 38. Following screening, Defendant Quilala "cleared [Decedent] for housing in a holding cell alone without any designation regarding her state of health, specifically as a postpartum inmate, that would alert those in charge of her care that she required further" monitoring and care due to heightened risk of harm. *Id.* ¶ 39. Postpartum inmates have the "right to immediate medical attention, including attention for drug or alcohol treatment or withdrawal, and an immediate referral to a health care provider," according to KCSO Policy H-100 and "pursuant to the *Yeager* Class Action." *Id.* ¶ 40.

As the Court found in dismissing their first amended complaint, Plaintiffs again fail to adequately allege in the SAC that Defendant Quilala was aware of any heightened risk of self-harm. Thus, Plaintiffs do not allege that Decedent made Defendant Quilala aware of a heightened risk of suicide or that Defendant Quilala should have known of a heightened risk of suicide due to any actions or behavior by Decedent. Plaintiffs allege only that Defendant Quilala failed to identify Decedent as postpartum but do not allege that any such identification necessarily leads to a corresponding suicide protocol. Moreover, Plaintiffs do not allege that Defendant Quilala otherwise failed to inquire or evaluate Decedent as to mental illness or suicide risk. Instead, Plaintiffs allege in conclusory fashion that Defendant Quilala "failed to initiate referral to mental health" but do not identify and plead any facts regarding why such referral was required and how Defendant Quilala failed to do so. As to KCSO policy, Plaintiffs allege that postpartum status affords inmate the right to "immediate medical attention" and an "immediate referral to a health care provider." However, Plaintiffs do not plead that KCSO policy provides, for instance, that a detainee's mere status as postpartum requires an immediate mental health evaluation and certain suicide protocols.

At this pleading stage, and making all reasonable inferences in favor of Plaintiffs, the Court concludes Plaintiffs have failed to adequately allege that Defendant Quilala was aware, or

reasonably should have been aware, that Decedent was at an acute risk of harm. Plaintiffs plead no facts that reasonably would permit the drawing of an inference that Defendant Quilala was informed of any heightened risk for Decedent, nor that circumstances should have made Defendant Quilala aware of any such risk. At best, Plaintiffs' assertions may support a claim of negligence but are insufficient to rise to deliberate indifference. *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2022 WL 2392619, at *4 (E.D. Cal. July 1, 2022) (citing cases and noting that "the Ninth Circuit itself, as well as district courts within the circuit, have held time and again that even gross negligence does not rise to the level of deliberate indifference").

As such, Plaintiffs fail to plead cognizable claims of failure to protect from harm and failure to provide medical care under the Fourteenth Amendment, pursuant to section 1983, against Defendant Quilala.

Regarding Plaintiffs' claim of deprivation of right to a familial relationship, as noted *supra*, "[a] prison official's deliberately indifferent conduct will generally 'shock the conscience' so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Lemire,* 726 F.3d at 1075. Plaintiffs identify no allegation of fact, aside from those recounted above, in support of said claim against Defendant Quilala. As the Court has found Plaintiffs fail to state cognizable claims against Defendant Quilala for failure to protect and to provide medical care, Plaintiffs allegations are insufficient to state a claim of deprivation of right to a familial relationship. *Cf. Palacios v. Cnty. of San Diego*, No. 20-cv-450-MMA (DEB), 2020 WL 4201686, at *11 (S.D. Cal. July 22, 2020) ("… the Court has already found that Plaintiff pleads sufficient facts to show a deliberate indifference to Ortiz's serious medical needs under the Fourteenth Amendment … These facts leading up to Ortiz's suicide plausibly demonstrate that [personnel] could have had time to actually deliberate. Therefore, the Court finds that Plaintiff pleads sufficient facts to sustain her substantive due process claim under the Fourteenth Amendment for the purpose of surviving a motion to dismiss.").

///

///

///

### B. Federal Claims Against KCHA

#### 1. *Governing Authority*

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Local governments are responsible only for their own illegal acts; they are not vicariously liable for their employees' actions. *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

A municipality is held liable only when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Monell*, 436 U.S. at 691. This "official municipal policy" need not be expressly adopted, "[i]t is sufficient that the constitutional violation occurred pursuant to a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citation and quotations omitted). A policy can also be one of action or inaction, such as a failure to train employees when such omissions amount to the government's policy. *See Long*, 442 F.3d at 1189 ("[A] county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference[.]").

Thus, to establish a § 1983 claim for municipal liability, Plaintiff must show: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Burke v. Cnty. of Alameda*, 586 F.3d 725, 734 (9th Cir. 2009).

Courts in the Ninth Circuit use a two-part test to evaluate whether factual allegations regarding municipal liability are sufficiently pled: "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing

party to be subjected to the expense of discovery and continued litigation." *A.E. ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

"Under Ninth Circuit precedent, [a] policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations. In an 'omission' action, a plaintiff must show the municipality's policy of inaction amounts to deliberate indifference to the plaintiff's constitutional right, and that the policy caused the violation, in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Fosbinder v. Cnty. of San Diego*, No. 24-cv-733-RSH-SBC, 2024 WL 4631275, at *10 (S.D. Cal. Oct. 30, 2024) (alterations in original; quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012)).

2. *Analysis*

Hospital Defendants seek dismissal of the fourth cause of action on the grounds that Plaintiffs have not alleged sufficient facts to state a *Monell* claim against KCHA itself as employer of Defendant Quilala. (Doc. 49-1 at 9-10).

In *Cavanaugh v. County of San Diego*, the Court of Appeals reasoned that, "[b]ecause the complaint did not adequately plead a constitutional violation by the individual defendants, the district court correctly dismissed the *Monell* claim against San Diego County." *Cavanaugh v. Cnty. of San Diego*, No. 20-56311, 2021 WL 6103115, at *1 (9th Cir. Dec. 22, 2021) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Applying that principle here, even if the *Monell* allegations in the complaint would by themselves be sufficient to state a *Monell* claim against the County, the failure of Plaintiffs to plead any constitutional violation by individual Defendants results in a failure of any such *Monell* claim. *Cf. Est. of Kamara v. Cnty. of San Diego*, No. 25-cv-0226-AJB-VET, 2026 WL 751429, at *6 (S.D. Cal. Mar. 17, 2026) (denying dismissal of *Monell* claims where defendants did not move to dismiss underlying deliberate indifference claims, noting the FAC asserts a "longstanding custom of arresting [] intoxicated or mentally ill individuals rather than diverting them to hospitals," that the "Department has a custom and practice" of such arrests, that "deputies frequently arrest and jail" such individuals, and "County was aware" of the pattern of deaths therefrom, with plaintiffs alleging 20 such deaths over an 11-year period).

The Court finds that, as Plaintiffs fail in the SAC (as they did in the first amended complaint) to plead any underlying constitutional violations by Defendant Quilala, Plaintiffs' *Monell* claims against KCHA fail. *See, e.g.*, *Harris v. Cnty. of San Diego*, No. 3:24-cv-2117-JES-KSC, 2025 WL 2441046, at *6 (S.D. Cal. Aug. 25, 2025) ("Although Plaintiff alleged constitutional violations against Sheriff Martinez and doe defendants, such claims are not adequately pled, … [and] Plaintiff fails to allege a violation of his constitutional rights by any individual. Therefore, Plaintiff's *Monell* cause of action against the County is [dismissed].").

**C. Leave to Amend**

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires" as the purpose of the Rule is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). However, courts may, in their discretion, choose to decline leave to amend due to futility, bad faith, undue delay, prejudice to the opposing parties, dilatory motive or conduct, or a repeated failure to cure deficiencies by amendments. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–893 (9th Cir. 2010). A court's discretion in denying leave to amend is particularly broad after plaintiff has already been afforded an opportunity to amend the complaint. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016).

Here, the Court previously dismissed Plaintiffs' claims against the Hospital Defendants for the same reasons the Court again has found Plaintiffs' claims pleaded in the SAC deficient. *See* (Doc. 43). Because Plaintiffs already attempted to remedy the pleading deficiencies in their first amended complaint but, as set forth above, have failed, the Court will deny leave to amend as futile. *See Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014) (explaining that futility of amendment can justify the denial of leave to amend and reiterating that a court's discretion in denying amendment is "particularly broad" when it has previously given leave to amend).

**IV. <u>Conclusion and Order</u>**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Hospital Defendants' motion to dismiss (Doc. 49) is GRANTED.

2. The first, second, third, and fourth causes of action are DISMISSED without leave to amend against the Hospital Defendants.
3. As all claims against the Hospital Defendants have been dismissed without leave to amend, Defendant Kern County Hospital Authority and Julius Quilala are DISMISSED from this action; and
4. The parties remaining in this action SHALL FILE a joint report, no later than August 19, 2026, setting forth a proposed schedule for all remaining case management dates (*see* Doc. 56).

IT IS SO ORDERED.

Dated: **August 10, 2026**

UNITED STATES MAGISTRATE JUDGE